ANDREW JOHNSON V. STATE OF NEBRASKA.

FILED JULY 31, 1924. No. 23714.

1. **Homicide:** STATEMENT BY VICTIM: QUESTION FOR COURT. In a prosecution for murder, the admissibility of a statement by the victim of the homicide that he was shot by defendant is a question of law for the court.

2. ———: ———: ADMISSIBILITY. In a prosecution for murder, a statement by the victim of the homicide that he was shot by defendant may be admitted in evidence, if made under a sense of impending death, and the foundation for its admission may be shown by circumstances.

3. ———: ———: ———. The time elapsing between the making of a dying declaration and dissolution is not necessarily a factor in determining the admissibility of the declaration as evidence.

4. ———: ———: ———. In a prosecution for murder, a statement by the victim of the homicide that he was shot by defendant, *held* admissible in evidence as a declaration made under a sense of impending death, the circumstances being outlined in the opinion.

5. **Criminal Law:** DEFENSE OF DRUNKENNESS: QUESTION FOR JURY. Where the evidence in a prosecution for murder shows that defendant shot and fatally wounded his victim, the defense that the former, a dipsomaniac, was drunk and unconscious at the time of the shooting presents a question for the jury, if the testimony on that issue is conflicting, but sufficient to sustain a conviction.

6. ———: NONAVAILABLE ERROR. In a criminal prosecution, the admission of evidence to which defendant objects may not be available as error, if he subsequently adduces evidence of the same import.

7. **Harmless error** in an instruction does not require the reversal of a conviction in a criminal prosecution.

ERROR to the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

Johnson v. State.

*Dolezal, Spear, Mapes & Stevens,* and *J. J. Gleeson,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, GOOD and THOMPSON, JJ.

ROSE, J.

In a prosecution by the state in the district court for Dodge county, Andrew Johnson, defendant, was charged with murder in the first degree. He pleaded not guilty and upon trial was convicted of manslaughter. For that felony he was sentenced to serve a term of not less than 12 nor more than 14 months in the penitentiary. As plaintiff in error defendant presents for review the record of his conviction.

The principal argument is directed to the assignment that the trial court erred in admitting in evidence proof of statements or declarations by the victim of the homicide after he had been fatally wounded. This and other assignments of error require a consideration of the evidential facts.

William Jurging died October 31, 1922, from a gunshot wound inflicted in North Bend, October 26, 1922, between 5:30 and 7 o'clock in the afternoon. Andrew Johnson, defendant, was accused of firing the fatal shot. Disregarding for the moment all objections to evidence admitted at the trial, there is testimony tending to prove the following facts: Defendant, a dipsomaniac, was 64 years of age. He was a painter and lived alone. He met Jurging and James Herbert in a barber shop in North Bend about 5:30 in the afternoon, October 26, 1922. Jurging said he had a bottle, and defendant replied that he had one too, at home. Jurging then suggested going to the home of the defendant. The three, Jurging, Herbert, and defendant, left the barber shop together and departed in the latter's automobile. A little later, defendant driving, they arrived at his home a few blocks from the barber shop. Jurging and defendant, and

perhaps Herbert, had been drinking. Defendant unlocked
the door of his garage, drove his automobile in, and came
out and relocked the garage. All three went into his house
and took turns in drinking from the contents of two bottles.
Between 6 and 7 o'clock, approximately 6:15 or 6:30, de-
fendant knocked at the door of Hans Anderson, a near
neighbor and said: "There is a dead man outside." Ander-
son investigated and, in front of his house, found Jurging
apparently helpless on the ground in the street between the
sidewalk and the curb. Within a few minutes neighbors
helped Jurging into an automobile, assuming he was drunk,
and took him about half a mile to the home of Herman
Haasch, where he had been living. There it was immediate-
ly discovered that he had a bullet hole in his breast. A
physician arrived promptly in response to a call. Jurging
remained at the Haasch home perhaps two hours or more,
but it was not lighted by electricity, and for that reason he
was taken a short distance to the home of Leroy Widener,
where an operation was performed before midnight. Not
long after Jurging had been taken off the street, an officer
found defendant on the ground in a drunken stupor in
front of Anderson's home, took him home, put him in
bed with his clothes on, locked the door, and left him there
alone, not knowing Jurging had been shot. Later in the
night, with his position and condition apparently unchang-
ed, the sheriff broke in, aroused him with difficulty and
took him to Fremont and imprisoned him in the county
jail. While searching the defendant's home at the time of
the arrest, two partially emptied bottles were standing on
the kitchen table and there was a revolver under a cloth on
a desk in the sitting room. The revolver contained four
loaded cartridges, and one empty shell which still retained
the odor of recently exploded powder. The bullet after-
ward found in the body of Jurging corresponded to those re-·
maining in the revolver. Herbert, who perhaps knew what
occurred at the spree, disappeared. Jurging died five days
after he was shot. Defendant was a witness at the trial,
but did not tell the story of the homicide. He testified he

was a dipsomaniac; became unconscious during the drinking in his kitchen; knew nothing that occurred until restored to consciousness in the county jail the next morning; had no recollection of intervening events. Notwithstanding this testimony, he said he did not shoot Jurging—evidence relating to an event which occurred during his estimated period of unconsciousness. This statement, however, may have been based on the theory that he was mentally irresponsible and incapable of a homicidal act.

Over the objections of defendant, the state was permitted to adduce proof of a statement by Jurging, while at Haasch's, before he was taken to Widener's, that defendant shot him in the latter's home after the three had been drinking there. There were also objections to other testimony of a similar nature.

Were the rulings prejudicially erroneous? The admissibility of the statements to which objections were made was a question of law for the court, determinable under the circumstances disclosed. *Johnson v. State,* 88 Neb. 328. If the statements were admissible as having been made under a sense of impending death, their inadmissibility as *res gestæ* is immaterial. *Fitzgerald v. State,* 11 Neb. 577. If the statements were dying declarations, the time elapsing between their utterance and dissolution is not a determining factor. *Rakes v. People,* 2 Neb. 157.

Jurging had been shot in the breast. He was found practically helpless. Though conscious, he spoke with difficulty. He knew he was being attended by a physician who had warned him of his critical condition. He expressed the conviction that his injury was fatal. He manifested no ill will or malice toward defendant. What occurred at the spree was reluctantly told by him. Had he survived, he would have been a competent witness to the circumstances attending the shooting. It may fairly be inferred that the taking of an oath as a witness in the presence of defendant would not have been a more effective means of eliciting the truth than the solemn impression of impending death. While the statements were made in response to questions, this did not

make them inadmissible. No improper influence was exerted. On a record disclosing the circumstances outlined, error does not appear in the overruling of the objections. Furthermore, defendant was not prejudiced by this feature of the state's case. Defendant himself called an attending physician as witness and from him elicited testimony that Jurging declared defendant had shot him and that the shooting was accidental. Proof of the same kind on behalf of the state that defendant shot Jurging, therefore, is not available as error, but it was for the jury to determine from all the circumstances whether the shooting was accidental or otherwise.                                                      ,

It is also insisted that the evidence is insufficient to sustain the conviction. The principal theory of the defense was that defendant was a dipsomaniac and that he was drunk and incapable of a criminal act. His testimony on this issue was given with apparent candor. It makes a strong appeal to reason and judgment and is strengthened by the opinion of an expert that defendant was a dipsomaniac who lost control of his mental faculties when intoxicated. Science, however, does not settle this question in favor of defendant as a matter of law, for the reason there is evidence tending to show that defendant, a few minutes before and a few minutes after the shooting, performed acts which seemed to be directed by rational operations of the mind. The issue, therefore, was one for the jury and there is sufficient evidence to sustain the verdict.

Complaint is also made because the district court overruled objections to statements made by Jurging while at the Widener home. The jury were instructed to disregard this testimony, but it is argued that defendant, nevertheless, was prejudiced by it. Other testimony of a similar nature was properly admitted and consequently the error, if any, was not prejudicial.

The giving of an instruction, defining the term "*res gestæ*" and permitting the jury to consider as such the statement that defendant shot Jurging, is assigned as error,

but does not require a reversal because that statement was properly admitted for reasons already stated under another assignment of error.

No error prejudicial to defendant has been found in the record.

AFFIRMED.

Note—See Criminal Law, 17 C. J. secs. 3557, 3688; Homicide, 30 C. J. secs. 493, 497, 504, 507, 585.