## FREDERICK A. EDWARDS V. STATE OF NEBRASKA.

### FILED JULY 1, 1925.    No. 24306.

1. **Homicide: EVIDENCE: DYING DECLARATIONS.** In a prosecution for homicide, resulting from an operation to procure an abortion, it is not error to receive in evidence the dying declaration of the patient which contains statements tending to prove that a conspiracy existed between her and others named in the declaration to perform the unlawful act, the statements in the declaration being competent and relevant to the facts connected with the commission of the offense.

2. **Criminal Law: TRIAL: PROPER MATTER TO SUBMIT TO JURY.** "The modern practice, both in civil and criminal cases, is to send to the jury room all instruments, articles and documents, except depositions, which have been received in evidence, and which will, in the opinion of the trial judge, aid the jury in their deliberations." *Russell v. State,* 66 Neb. 497.

3. ————: ————: ————. "In the absence of statutory direction, it is, in a great measure, left to the sound discretion of the court as to what papers, books, or other matters of evidence, or instructions, the jury will be permitted to carry with them to their room upon retiring to consider of their verdict." *Langworthy v. Connelly,* 14 Neb. 340.

4. ————: ————: ACTS AND DECLARATIONS. "When a conspiracy is once shown to exist by the requisite *quantum* of proof, the acts and declarations of each of the conspirators, in furtherance of the common design, are the acts and declarations of all." *Lamb v. State,* 69 Neb. 212.

5. **Homicide: EVIDENCE: DYING DECLARATIONS.** "In a prosecution for homicide in procuring an abortion under section 6 of the Criminal Code (now section 9547, Comp. St. 1922) dying declarations of the deceased may be admitted in evidence, under the same conditions and limitations as in prosecutions for murder or manslaughter." *Edwards v. State,* 79 Neb. 251.

6. ————: ————: ————: WEIGHT AND CREDIBILITY FOR JURY. Where dying declarations have been admitted in evidence, their weight and credibility are for the determination of the jury.

7. ————: ————: ————: ADMISSIBILITY. The principle on which dying declarations are admitted is "that they are declarations made in extremity, when the party is at the point of death, and when every hope of this world is gone; when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth." *Rex v. Woodcock* (1789) 1 Leach (Eng.) 500.

Edwards v. State.

8. ———: ———: ———: ———. In homicide cases, the rule has long prevailed that the strict rules which are ordinarily applicable to the admission in evidence of the spoken word do not always apply with the same strictness to dying declarations.

9. ———: ———: ———: ———. The admission of a dying declaration is, primarily, a ·question to be determined by the nature of each case.

10. ———: ———: ———: FORM. The law looks to the substance rather than to the form, and it does not require that dying declarations must be made in any prescribed form or manner.

ERROR to the district court for Douglas county: CARROLL O. STAUFFER, JUDGE. *Affirmed.*

*Jamieson, O'Sullivan & Southard,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before ROSE, DEAN, DAY, GOOD and THOMPSON, JJ., and SHEPHERD, District Judge.

DEAN, J.

Defendant, an Omaha practicing physician, was informed against in the district court for Douglas county, under count one of the information, for having unlawfully caused the death of Lillian Holman, January 14, 1924, she being, then, an unmarried woman just past her eighteenth year. The specific charges are that the abortion was procured by the unlawful use, by defendant, of certain instruments, and other means, used upon and administered to Miss Holman. Under count two defendant was charged with having unlawfully used, in and upon the body and womb of Lillian Holman, certain instruments and other means, wherewith certain bruises and wounds were inflicted upon the vitalized embryo, or fetus, of the pregnant woman, which caused its death.

The jury found defendant guilty, under both counts of the information, whereupon he was sentenced by the court to serve a term of five years, under each count, in the state penitentiary, the sentence under both counts to run con-

currently.    A motion for a new trial was denied and defendant prosecutes error.

The state, over defendant's objections, introduced in evidence the dying declaration of Miss Holman.    The declaration, which is "exhibit 5," follows:

"Omaha, Nebraska.

"Lillian Holman, 18 years old Dec. 11, 1923.    Edward Hazen is responsible for my condition, he said he was a ball-player, not now working, he must be about 22 years old, went out to Dorsey's chicken hut on West Center St. about 2½ months ago; three couples went—Joe Flynn, Douglas Docks, Miss Meagher, Miss·Rhoades, Hazen and myself; four of us girls had an apartment at Gray Gables, 20th & Davenport; all three couples were in a coupé, had something to drink—the boys furnished it—relations took place at Gray Gables—had had no relations with any one else other than Hazen—first discovered that I was pregnant at next period—tried quinine and camphor internally to procure an abortion—Hazen gave me $80 to have an operation performed.    I called up Hazen at his home, he hung up receiver.    Hazen then called me up and asked me to come up to his father's office; he then turned and said to some one am I talking all right?    I didn't go to his father's office but met him near Burlington Station.    Hazen suggested that I go to Dr. Mathews—I wouldn't; then he suggested Dr. Edwards with office at Securities Bldg.    On the 13th of Dec. 1923 about 3:30 p. m. first went to Dr. Edwards with Daisy Beem, my sister, made appointment for next day—gave him $50.00 that day—on next day at 3:30 went again to Dr. Edwards he then used an instrument and placed a rubber tube—I gave him the name Gertrude Holman, 1939 So. 9th; Daisy gave the name Mrs. Daisy Doran, 1117 So. 10th; on the 14th after he put in the tube I and Daisy had to go home for money for taxi; Daisy and I took Yellow cab from home to 412 So. 48th St. where Dr. Edwards had told me to go; it was about 4:30 p. m. when we got there.    Nothing more was done with me that night. He was fixing up another girl.    Dr. Edwards came to the

house on the 14th but did nothing for me.  Came again about midnight on the 15th and used instruments on me and put in three tubes.  On the following night Dec. 16th he came again about midnight and used instruments and took out all tubes—Mrs. Childs had the house—gave no anæsthetic but Mrs. Childs held me while he operated—saw her diploma as a trained nurse on the wall—she is a widow and has three children.  I left the next morning in a taxi—I called Daisy and she sent a taxi for me and met me at corner of 10th and Pierce Sts.  The folks thought I had gone to Tekamah to visit.  Another girl came just before I left—Came home on morning of Dec. 17, 1923.  Mother was home in bed when I got home—she went to hospital three or four days later—had no doctor until on day before I entered Nicholas Senn Hospital when Daisy called Dr. Foltz—he wasn't told of my trouble until the next day about 12 o'clock—Dr. Foltz had me brought to Nicholas Senn Hospital as soon as he learned the trouble—that was Friday, Dec. 28th, 1923, at about 3:30 p. m.

"Lillian Holman.

"The above statement bearing my signature was read to me, and I, knowing that I am dying, do solemnly swear that it is the truth.

"(Signed)    Lillian Holman.

"Witness:  A. B. Griffith, Louise Brackhahn.

"Subscribed and sworn to before me this 5th day of January, 1924.

"(Seal)    H. S. Brackhahn, Notary Public."

Defendant denies that he is guilty of the offense with which he is charged.  He admits, however, that the declarant and her sister called at his office December 13, 1923, and that he then made a physical examination, and that, by appointment, they came the next day, when he made another examination, and that he received $50 from her; that there was no evidence of pregnancy; that at his direction she went to Mrs. Childs' home at 412 South Forty-eighth street and was there treated by him for gonorrhea

and infection, or a kindred ailment, several times; that she left there December 16, which was the last time he saw her, and was subsequently taken to the Nicholas Senn Hospital by direction of Dr. C. B. Foltz.

Defendant excepts to the dying declaration. His exceptions cover more than 40 pages of an 800-page record. Practically the same identical objection is separately applied to almost every sentence, every expression, and every statement which Lillian Holman voiced with her dying breath. The substance of the objection, which was overruled, is that the statements are severally "incompetent, irrelevant, and immaterial, hearsay testimony, and the mere conclusion of the witness, and for the further reason that no sufficient foundation has been laid and the same is not part of the *res gestæ* of the case, and not being matter which declarant would be permitted to testify to if in court." But see *Edwards v. State*, 79 Neb. 251.

We do not agree with counsel. It seems to us that the declaration is competent and was properly submitted to the jury. Material facts, which are a part of the *res gestæ*, are stated, and other facts, in specific terms and with unerring accuracy, are stated which tend to prove that Hazen and defendant and Lillian and her sister, Daisy Beem, and Mrs. Childs, to whose place Lillian was sent by defendant, were all unlawfully engaged in a conspiracy to procure an abortion. The competency of the declaration, in this respect, arises in part, from the fact that it tends to identify the conspiring participants. There is no need to repeat the ghastly details of the felonious operation which the evidence tends to prove was performed by the defendant doctor. The statements in the declaration and the references to Mrs. Childs and her house and "another girl" whom defendant "was fixing up" and still "another girl" who came just before declarant left, when considered with the other evidence, were competent to go to the jury in proof of the questionable type of house to which defendant sent the declarant and his unlawful purpose in doing so. Whether

a dying declaration fairly reflects the facts is a question for the jury. Prejudicial error is not shown therein.

If the dying girl spoke the truth, will it be seriously argued that she and Hazen and defendant and Daisy Beem and Mrs. Childs did not conspire together to commit the felonious act? Or will it be contended that Lillian's material statements, if true, do not point out facts which form a part of the *res gestæ?* And these were all questions for the jury, and the trial court properly so held. The following cases support the rule: *Lamb v. State,* 69 Neb. 212; *Clark v. State,* 102 Neb. 728; *Mathews v. State,* 111 Neb. 593; *State v. Crofford,* 133 Ia. 478; *Solander v. People,* 2 Colo. 48; *Johnson v. People,* 33 Colo. 224; *People v. Atwood,* 188 Mich. 36; *State v. Power,* 24 Wash. 34; *State v. Dickinson,* 41 Wis. 299; *State v. Howard,* 32 Vt. 380. See, also, *Fields v. State,* 107 Neb. 91, and the above cases there cited, with excerpts therefrom, at page 98 and following. The *Fields* case has to do with a homicide which grew out of a like unlawful operation as that involved here. It is there disclosed that a letter was written by the young woman to her lover several days before the operation was performed. As a result of the operation she died shortly afterward. It was held that the letter was properly submitted to the jury on the ground that the statements therein were relevant and, being so, were clearly a part of the *res gestæ.*

A familiar rule, as affecting the apprehension of conspirators, is pointed out in *Lamb v. State,* 69 Neb. 212, wherein it is held that, if it is shown by sufficient competent evidence that two or more persons have joined, or participated, in the commission of a felony, the acts and declarations of each of the conspirators, in the common design, are the acts and declarations of all. *Welter v. State,* 112 Neb. 22; *Neal v. State,* 104 Neb. 56; *Katleman v. State,* 104 Neb. 62.

In homicide cases it seems that the rule has long prevailed that the strict rules which are ordinarily applicable to the admission in evidence of the spoken word do not always apply with the same strictness to dying declarations. 1 R. C. L. 542, sec. 86. It seems, too, that this type of evi-

dence, which would be admissible in one case, would not necessarily, nor under dissimilar circumstances, be admissible in another, and is, primarily, a question to be determined by the nature of each case. *State v. Howard,* 32 Vt. 380.

In *Rex. v. Woodcock* (1789) 1 Leach (Eng.) 500 (cited in *King v. Perry,* 6 B. R. C. 235), it is said that a dying declaration "made in extremity, when the party is at the point of death, and when every hope of this world is gone; when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth; a situation so solemn and so awful is considered by the law as creating an obligation equal to that which is imposed by a positive oath administered in a court of justice."

*Rex v. Louie,* 2 B. R. C. 912, is a case where an Indian woman died as the result of an unlawful assault. Not long before she died a constable asked questions of her through an interpreter, who was sworn, and "a doctor wrote down what the interpreter said the woman's answers were." The doctor and the justice of the peace then signed the statement. To some of the questions the woman indicated her answer by nodding her head. It was held that the statement was admissible as a dying declaration.

"The law looks to the substance rather than to the form, and it does not require that dying declarations must be made in any prescribed form or manner. * * * If the rule were otherwise dying declarations would be denied admission in many cases, not because the declarant was not under the sense of impending dissolution and without hope of recovery, but because of the violation of some technical rule." 1 R. C. L. 542, sec. 86. In *Worthington v. State,* 92 Md. 222, 244, it is said that a dying declaration may be made in response to leading questions, or even to urgent solicitation. 1 Greenleaf, Evidence (16th ed.) 245; 2 Bishop, New Criminal Procedure (2d ed.) sec. 1207, *et seq.; Howard v. State, ante,* p. 67.

Four doctors testified on the part of the state. Some of these attended Lillian Holman after the operation and all were present at the autopsy. The evidence of two or more of the doctors was such that the jury would be justified in finding that Lillian Holman had been operated on for an abortion. Almida Rice is a girl of 16 employed as a maid by Mrs. Childs from November 2 until about December 16, 1923. She testified that defendant was at Mrs. Childs' place almost every day, and that he had female patients there during all the time of her employment, and one of these was Lillian Holman. From her evidence, if they believed her statements, and without going into details, we think the jury would be justified in finding that Mrs. Childs' house was maintained almost solely for the purpose of performing such unlawful operations as are involved in the present case. She testified that defendant had many female patients there.

Defendant contends that Juror Heine, a Northwestern railroad conductor, was disqualified, from the fact that a witness testified that he had expressed an opinion in the presence of a certain witness, in effect that, if he were to serve on the Edwards' jury, he would "stick until hell froze over." Heine denied this and said that, on the occasion referred to, his language was a mere passing remark made when he first read about the occurrence, and that he then said, in substance, "Yes, there is another poor victim, and if the man is guilty he should pay the penalty." This, he said, was long before he was notified to report for jury work. This evidence was brought out at an examination held on the motion for a new trial. We do not think the court erred in refusing to grant a new trial on this assignment.

Complaint is made because the state obtained, and exhibited to the jury, certain instruments found in defendant's possession at the Childs home. The contention is that his constitutional rights were thereby invaded. But when possession was obtained by Paul Haze, a detective connected with the police department, Haze testified that defendant

said at the time, "That would be all right." Reversible error does not appear in this assignment. We conclude that the evidence throughout amply supports the verdict. *Langworthy v. Connelly*, 14 Neb. 340; *Russell v. State*, 66 Neb. 497.

Notwithstanding defendant's complaint in respect of certain of the instructions, we find upon examination that the exceptions do not present questions of reversible error. And this is true of other assignments of alleged error to which our attention has been directed but have not discussed for the reason above stated.

The judgment of the district court is right, and is in all things

AFFIRMED.

Note—See Homicide, 30 C. J. secs. 494, 500, 502, 507, 510, 521.