WILLIAM BIRDSLEY, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

74 N. W. 2d 377

Filed January 13, 1956. No. 33851.

*Dwight Griffiths* and *Robert S. Finn,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Ralph D. Nelson,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff in error, William Birdsley, hereinafter called defendant, was charged with motor vehicle homicide under the provisions of section 28-403.01, R. S. Supp., 1953, which became effective August 27, 1949. The information charged that on September 19, 1953, defendant caused the death of Alvin Carl Steffens and Dale Bize without malice while he was engaged in the unlawful operation of a motor vehicle, and he was thereby guilty of motor vehicle homicide contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Nebraska.

Upon a plea of not guilty, defendant was tried to a jury, and it returned a verdict finding him guilty as charged. Subsequently, defendant's motion for dismissal or for judgment of not guilty notwithstanding the verdict or in the alternative for new trial, was overruled, and defendant was sentenced to pay a fine of $200 and costs of prosecution. Therefrom defendant prosecuted error to this court, assigning some 14 alleged errors, all of which concededly present only the basic question of whether or not the evidence was sufficient to sustain the verdict. We conclude that the evidence was sufficient.

Section 28-403.01, R. S. Supp., 1953, provides in part: "Whoever shall cause the death of another without malice while engaged in the unlawful operation of a motor vehicle shall be deemed guilty of a crime to be known as motor vehicle homicide and, upon conviction thereof, shall be * * *" punished as provided therein.

An examination of the record discloses competent evidence adduced by the State from which the jury could have found beyond a reasonable doubt as follows: On the evening of September 19, 1953, defendant, then 21 years of age, drove a blue 1950 Ford two-door car from Auburn to Falls City. The car belonged to his father and mother. Three young men who were friends of defendant went with him. The weather was favorable, clear, and dry. They left Falls City to return to Auburn about 11 p. m., and on the outskirts thereof they picked up Dale Bize, a soldier in uniform and on leave, who was hitchhiking to his home in Lincoln. About 11:30 p. m., one Robert G. Bantz, 18 years old, who was driving his own 1950 green Ford, saw defendant get in the car he was driving and leave a drive-in on the outskirts of Falls City. Bantz also left soon thereafter and drove north on highway No. 73 toward Auburn. Several miles north of Falls City he again saw defendant driving north toward Auburn on the same highway. Bantz, while driving his car 80 miles an hour, passed defendant. Thereafter, while Bantz was driving 90 miles an hour, defendant passed him. Later, Bantz, driving better than 95 miles an hour, again passed defendant, who thereafter followed about one-half or one car length behind Bantz as they so continued down cemetery hill at the south end of an "S" curve and entered a straightaway between the south and north curves of the "S" located on paved highway Nos. 73-75 about 3 miles south of Auburn. The pavement was 20 feet wide with a curb on the east side but none on the west side. There defendant started to turn out to the left and pass Bantz again, but a 1946 Chevrolet two-door sedan was approaching from the north toward the south on its right side of the highway at 40 or 45 miles an hour. The Chevrolet safely passed Bantz and attempted to swerve and avoid defendant who was attempting to swerve back into his own lane again, but the left side of defendant's car struck the left front bumper, fender, and wheel of

the Chevrolet and scraped along the entire left side thereof. The county sheriff investigated the accident within a few moments after it happened and then and later made necessary measurements.

After the impact the Chevrolet, so damaged and with its left front wheel bent back and inward, the tire thereon blown out, and the hood up, stopped within 25 or 30 feet south of the point of impact where there were some dirt and refuse about 3 feet wide and a car length long located on the pavement about equidistant on each side of the center thereof. Whether such dirt and refuse came from the Chevrolet or defendant's car or both of them is disputed. When the Chevrolet stopped, its left front wheel was about 2 feet over the center line headed southeast, with its left rear wheel about on the center line. There were no tracks on the pavement north of the Chevrolet.

After the impact defendant kept his foot down on the accelerator and never applied his brakes. Thus his car skidded at an angle to the east and north until its right wheels were off the east side of the pavement 10 or 15 feet north of the dirt and refuse. From that point its right wheels went north and east along the right shoulder of the highway with its left wheels on the pavement for some 296 feet until the car struck a cement flume which had a cement wall 11 inches high on each side thereof. From that point defendant's car veered to the left, back on the pavement, and after making a 50 to 60 foot oval or loop thereon with its left front wheel dragging, defendant's car angled back again over on the right shoulder. Thereafter, it traveled to and along a so-called first ditch and then went off into another deep ditch clear off the highway where it hit a high bank, scooped up dirt about 2 or 3 feet, and stopped 777 feet from the point of impact. There were no tracks or marks during the last 112 feet thereof except the stripping of the tops of brush and bushes as defendant's car went through the air and over the tops of them.

When found, defendant's car was lying on its right side facing east, with its wheels to the north. Carl Alvin Steffens and Dale Bize were found in the car, but they were both dead. Another young man, found pinned in the car, was living and survived. Another was found sitting on the ground close to the car, and survived. Defendant was found lying on the bank about 10 feet south of his car. He was conscious but injured, and there admitted that he was driving the car. Numerous photographs of the place where the accident occurred and of the cars involved appear in the record.

Evidence adduced by defendant and in his behalf conflicted in material respects with that adduced by the State. In that connection, however, defendant admitted that he was driving 60 or 80 miles an hour at the time of the accident near midnight, in violation of law, and that he had theretofore been racing with Bantz for several miles. However, defendant testified that he was 100 or more feet behind the Bantz car when the Chevrolet, coming from the north, went off on the west shoulder of the highway, then turned back left over the center line thereof directly into defendant's path, when the right wheels of his car had been run off on the east shoulder by defendant in an effort to avoid collision. Defendant argued here that the evidence and physical facts conclusively supported that theory and that judgment of acquittal should have been rendered by the trial court because as a matter of law his unlawful acts were not the proximate cause of the accident and deaths. Such contention should not be sustained.

Section 39-723, R. R. S. 1943, provides in part: "No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person, nor in any case * * * at a rate of speed exceeding sixty miles per hour between the hours

of sunrise and sunset, and fifty miles per hour between the hours of sunset and sunrise." See, also, § 39-7,108, R. R. S. 1943. Further, section 39-748, R. R. S. 1943, provides that: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one half of the main traveled portion of the roadway as nearly as possible."

In Shiers v. Cowgill, 157 Neb. 265, 59 N. W. 2d 407, this court held: "Physical facts may not be accepted as a matter of law or as ground for refusal to submit a case to a jury as against the testimony of witnesses on a controverted question of fact unless they are demonstrable to a degree that reasonable minds cannot disagree as to their existence and unless the results flowing therefrom are demonstrable to the same degree agreeable to the known and immutable laws of physics, mechanics, or mathematics. If they fall short of this test, then they are to be considered by the jury along with all the other facts and circumstances proved.

"When there is a reasonable dispute as to what the physical facts show, the conclusions to be drawn therefrom are for the jury. The credibility of the witnesses and the weight to be given their testimony are solely for the consideration of the jury." See, also, Jones v. Union Pacific R. R. Co., 141 Neb. 112, 2 N. W. 2d 624. With regard to physical facts, such rules are controlling in the case at bar.

In Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349, this court held: "The credibility of witnesses and the weight of their testimony are for the jury to determine in a criminal case, and the conclusion of the jury cannot be disturbed unless it is clearly wrong." We reaffirmed such rule as recently as Hoffman v. State, 160 Neb. 375, 70 N. W. 2d 314.

Also, in Vanderheiden v. State, 156 Neb. 735, 57 N. W. 2d 761, we held that: "It is not the province of this court to resolve conflicts in the evidence in law actions, pass on the credibility of witnesses, determine the plausi-

bility of explanations, or weigh the evidence. Those matters are for the jury."

Further, in Vaca v. State, 150 Neb. 516, 34 N. W. 2d 873, we held that: "This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." Such rules are also controlling here.

In Schluter v. State, 153 Neb. 317, 44 N. W. 2d 588, this court said: "The operation of motor vehicles is governed by many legal restrictions and requirements which are designed and intended to secure reasonable safety of persons upon the highways of the state. They were adopted because experience had established that a disregard thereof was likely to result in serious bodily harm or death. It has been considered in this state that a negligent violation of any of these by the operator of a motor vehicle on a public highway directly resulting in death of another person may render the operator guilty of manslaughter." See, also, Birdsley v. Kelley, 159 Neb. 74, 65 N. W. 2d 328; Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111.

In that connection, when the Legislature enacted section 28-403.01, R. S. Supp., 1953, it simply created and defined the crime of motor vehicle homicide in amelioration of the crime of manslaughter.

In manslaughter cases, this court has generally held that the negligence or unlawful acts of another driver which proximately contributed to the death, as distinguished from an independent intervening cause thereof, is not a defense if the evidence is sufficient to sustain the conclusion beyond a reasonable doubt that defendant's negligence or unlawful acts were also a proximate cause of the death of another. Schultz v. State, 89 Neb. 34, 130 N. W. 972, 33 L. R. A. N. S. 403, Ann. Cas. 1912C 495; Benton v. State, 124 Neb. 485, 247 N. W. 21; Vaca v. State, *supra*.

Likewise, also, we conclude that in a prosecution for motor vehicle homicide under the provisions of section 28-403.01, R. S. Supp., 1953, it is simply required that the unlawful operation of the motor vehicle by the accused shall be a proximate cause of the death of another.

Without doubt, in the case at bar the accident was the proximate cause of the deaths, and we conclude that there was ample competent evidence from which the jury could have found beyond a reasonable doubt that except for the unlawful operation by defendant of his motor vehicle there would have been no accident and that defendant's unlawful acts were a proximate cause of the deaths.

Other matters were presented and argued in briefs of counsel, but they require no discussion in order to dispose of the case upon its merits.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant.

AFFIRMED.