ALEX REIZENSTEIN, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.
87 N. W. 2d 560

Filed January 24, 1958. No. 34302.

*LaVerne H. Hansen,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Cecil S. Brubaker,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is a criminal action wherein in the district court for Scotts Bluff County, Nebraska, Alex Reizenstein, who will be referred to herein as the defendant, was charged and convicted of the crime of first degree murder. He was thereafter sentenced to confinement in the State Penitentiary during life. He duly filed a motion for new trial which was overruled. By petition in error to this court he seeks a reversal of the judgment of the district court.

The assignments of error are numerous but they fall into general groups or classifications. One group relates to the sufficiency of evidence to sustain a conviction, one to the foundation for and admissibility of dying declarations, one to the refusal to allow inspection of a statement made by the defendant, one to admissibility of exhibits, one to the admissibility of the testimony of witnesses, one to the refusal of the court to give instructions tendered by the defendant, and one to the giving of instructions by the court on its own motion.

For the purposes of this opinion it appears necessary, before considering the assignments of error, to state the

factual background as disclosed by the record. The following pertinent incidents are not in dispute. On and prior to November 30, 1956, the defendant and Lydia Reizenstein were husband and wife and lived in the city of Scottsbluff, Nebraska. A short time before 7:55 p.m., the exact time not being certain, Lydia Reizenstein, who will be hereinafter referred to as the deceased, was wounded in the abdomen by a charge from a 20-gauge shotgun. At the time she was shot she was in the bathroom of the home. She was removed to a hospital where she died about 10:40 p.m. Just before the shot was fired, the defendant searched for and found the shotgun, loaded it, and entered the bathroom after which the discharge was heard. No one saw the gun fired. After the shot the deceased was observed lying on the floor. The defendant was in the bathroom at that time. Police officers arrested the defendant and took him away. From the wound received the deceased died. A statement was taken from the defendant. That statement is not in evidence but a transcript of it appears as an exhibit.

The record does not disclose the exact time when the deceased was shot. Kathleen Reizenstein testified that she heard the shot and immediately went into the bathroom where she saw her mother on the floor. The shooting was immediately reported to the police. A police officer received the report while on patrol duty at about 7:55 p.m. and immediately went to the scene arriving at about 8 p.m. It is therefore reasonable to conclude that the shooting took place after 7 p.m.

Randy Reizenstein, a son, who was 7 years old at the time of the trial, testified that prior to the shooting he was in the bathroom with his mother when his father came in and continued an argument with his mother and stated that he was going to kill them all including himself. Randy left the bathroom, took the shotgun from the place where it was usually kept, and hid it under a bed. He returned to the bathroom where he saw his

father trying to get some shells out of a box and his mother was trying to prevent him from so doing. He helped his mother get the box away and he hid it. The defendant came out, found the gun, and returned to the bathroom, after which Randy heard a "pop" and he turned around and saw his mother lying on the floor and the defendant was standing up with the gun in his hand. He returned to the bathroom and his father laid the gun down and said: " 'Oh, I love you and I am sorry.' "

Mary Povoor testified that she called an ambulance and the police; that she then went into the Reizenstein home where she saw the deceased lying on the floor and the defendant sitting in a chair in the bathroom with the gun close beside him leaning against the wall; and that the police came and took the gun and the defendant away. She also testified that she heard a conversation between the deceased and police officer Lee Shipley wherein the deceased said in substance that she was ironing; that the defendant was drinking but wasn't drunk and he started arguing with her in there; and that she didn't pay any attention to him so he went and got the gun and shot her around the stomach. This witness also testified that the deceased told her that the defendant was fighting with her, that she didn't pay any attention to him, and that the defendant was at fault because she didn't pay any attention to him.

These conversations took place before the deceased was removed and taken to the hospital. After she was taken to the hospital an operation was performed and she died about 10:40 p.m. the same evening.

Lee Shipley testified in substance that after he arrived at the scene he talked with the deceased and she told him that the defendant had been drinking all evening and that she was trying to do her ironing; that the defendant came into the bathroom where she was doing her ironing and started giving her the dickens and quarreling with her; that she left the room once to get away from him and then she returned and began her

ironing again; and that the defendant appeared with a shotgun and pointed it at her stomach and shot her while she was standing ironing.

This witness further testified that under questioning the defendant admitted that there was an argument; that he got the shotgun and loaded it; that he did this just to scare his wife; that he intended to commit suicide; and that there was a scuffle and his wife grabbed the gun and pulled the trigger. He testified that later the defendant said he did not know how the gun went off.

Dorothea Johnston testified and stated that the last words of the deceased before her death were: " 'Oh, God, please take care of my children.' " The statement was made about 9:45 p.m.

The testimony of these witnesses as to what the deceased said was objected to on the ground of lack of foundation. The point of the objection was that the statements were made out of the presence of the defendant and they were hearsay unless a foundation was laid for them as res gestae or dying declarations, which foundation was absent.

Certain witnesses testified as to statements made by the defendant after he was apprehended and in custody. These statements apparently were taken in shorthand by a court reporter and by him transcribed. It does not appear necessary to summarize the testimony since it is not contended that the information was not admissible but only that the method of disclosing it to the jury was improper.

The defendant offered in evidence a copy of the statement made by the defendant. The statement was not received in evidence but it is in the bill of exceptions and was in the hands of the defendant. There will be reference to this statement later herein.

The testimony disclosed that at the point where the charge entered the body of the deceased the wound was ragged in appearance, of a diameter of approximately 2 inches, with a grayish-white halo around it, and below

the larger wound there were four or five separate perforations. The wound was about 2 inches below and 1 inch outside from the navel. There was no discoloration of the skin. The halo was made by a foreign substance.

It appears evident beyond peradventure, and that discussion is not necessary to sustain the view, that the evidence summarized is sufficient to sustain the verdict returned and the judgment rendered unless there were errors occurring at the trial sufficient to overturn that verdict and judgment or unless there was other evidence which has not been referred to sufficient to require a reversal. The defendant urges that there were such errors and such other evidence.

"This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." Birdsley v. State, 161 Neb. 581, 74 N. W. 2d 377. See, also, Vaca v. State, 150 Neb. 516, 34 N. W. 2d 873; Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349; Vanderheiden v. State, 156 Neb. 735, 57 N. W. 2d 761.

There are assignments and groups of assignments of error which the defendant contends require a reversal. The first of these relates to the statement made to and in the presence of witnesses by the defendant to which reference has already been made.

Before the commencement of the trial the defendant filed a motion for an order requiring the county attorney to produce for inspection written statements and statements taken in shorthand. The stated reason for the production was that this inspection was necessary in order that the mental condition of the defendant at the time the statements were made might be determined. The motion was not supported at the time or when a hearing was had upon it by affidavit or other evidence. On the hearing on the motion the defendant called the

county attorney as a witness to support his claim of right to have the statements produced. The county attorney objected to testifying. The right of the county attorney to refuse to testify and to refuse to submit the statement for inspection was sustained.

Certain witnesses were called at the trial on behalf of the State who had been present when the statement of the defendant was made. They had refreshed their recollection from the statement as to what the defendant had said. The defendant's counsel requested the production of the statement for the purpose of cross-examination at the time. The request was denied. He objected to the witnesses testifying to their recollection of what the defendant said. The objections were overruled. This is assigned as error.

In Cramer v. State, 145 Neb. 88, 15 N. W. 2d 323, this court said: "In a criminal case the trial court is invested with a broad judicial discretion in allowing or denying an application to require the state to produce written confessions, statements and other documentary evidence for the inspection of defendant's counsel before the trial. Error may be predicated only for an abuse of such discretion." No reason is apparent why the same rule should not apply during the trial. The proper application of the rule is discussed in the opinion. In the light of the rule and the declared applicatory principles it cannot be said that the court erred in its rulings.

If any abuse of discretion was involved the defendant was afforded the opportunity to demonstrate it. He called the reporter who took the statement and attempted in that manner to get the entire statement from the notes into evidence. Objection was made and sustained, and his offer denied. The court did require the production of a transcript of the statement. The defendant offered the transcript in evidence. Objection to it was sustained.

In the light of the fact that the attorney for the de-

fendant had the statement and the opportunity, before the trial was over, to examine it and to ascertain whether or not his client had been prejudiced by the refusal to produce the statement when requested and to call attention to the particular prejudice, if any in fact existed, but in these respects failed to act, it does not appear that he is on this review entitled to assert successfully that the trial court abused its discretion in this area.

It must be said that the assignments of error related to the statement are without merit.

Two assignments of error relate to the admissibility of the testimony of witnesses as to what the deceased said within a short time after she was shot with reference to the shooting. The defendant insists that this was hearsay and therefore not admissible. The theory on which this evidence was admitted was either that the statements of the deceased were a part of the res gestae or that they were dying declarations, or both, and therefore admissible.

Three witnesses who were present recited the facts as to their observations of the deceased after she was shot. They were allowed to express their opinions as to whether or not she had a belief that she was going to die. They gave testimony as to what she said.

Whether or not the allowance of these witnesses to give their opinions that the deceased had a sense of impending death was strictly proper does not appear to be a matter of controlling importance. The true basis for the admission of dying declarations is evidence satisfactory to the court, not the jury, that statements were made with a present belief that death was imminent and certain. This of course is not the measure of weight to be given them. The weight and credibility are for the jury. In Johnson v. State, 112 Neb. 530, 199 N. W. 808, this court said, referring to dying declarations: "The admissibility of the statements to which objections were made was a question of law for the court, determinable under the circumstances disclosed." See, also, Edwards

v. State, 113 Neb. 698, 204 N. W. 780; Nanfito v. State, 136 Neb. 658, 287 N. W. 58.

In Edwards v. State, *supra*, it was also said: "Where dying declarations have been admitted in evidence, their weight and credibility are for the determination of the jury." See, also, Penn v. State, 119 Neb. 95, 227 N. W. 314.

As to whether or not it was proper for these witnesses to give opinions as to whether or not the deceased had an awareness of impending death it appears from the testimony of these witnesses that they had an opportunity to observe and did observe her condition, her attitude, and were able themselves to form their own opinions as to whether or not she thought she was going to die. The rule which we think should be regarded as applicable is expressed as follows in Pennington v. State, 136 Tenn. 533, 190 S. W. 546: "There is abundant authority to the effect that a witness who remains with the deceased a considerable time before his death, hears him talk, witnesses his demeanor, and has full opportunity for reaching a correct conclusion, may testify to the opinion, or conclusion formed from such circumstances, that the deceased was aware of impending dissolution."

In Clary v. Clary, 24 N. C. 78, in discussing the admissibility of opinions of witnesses, the court said: "It approaches to knowledge, and is knowledge, so far as the imperfection of human nature will permit knowledge of these things to be acquired, and the result thus acquired should be communicated to the Jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by the observations of others." See, also, People v. Sanford, 43 Cal. 29. The conclusion reached is that the evidence of all of these witnesses as to the declarations of the deceased between the time she was shot and the time she died was admissible as dying declarations. The further conclusion

is reached that the opinions of these witnesses were not erroneously admitted.

There is another reason, one which has not been stressed in the briefs, why this evidence was admissible. It was clearly on the record and under law a part of the res gestae.

It is often difficult to determine whether or not statements are to be regarded as res gestae. The general rule, as stated in Gain v. Drennen, 160 Neb. 263, 69 N. W. 2d 916, and supported by cases cited in the opinion, is the following: "There is no hard and fast rule for demarcation between that which is and that which is not res gestae, but a declaration to be competent evidence as part of the res gestae must have been made at such a time and under such circumstances as to raise a presumption that it was the unpremeditated and spontaneous explanation of the matter about which made."

In Hamilton v. Huebner, 146 Neb. 320, 19 N. W. 2d 552, 163 A. L. R. 1, this court pointed out some standards which are pertinent in determining whether or not statements may be admitted in evidence as res gestae, as follows: "To render such assertions admissible it is required that (1) there be some shock to the feelings sufficient to render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) it must relate to the circumstance causing the shock to the feelings."

The evidence in this case brings the statements of the deceased clearly within the rule as delineated by these decisions. It would serve no useful purpose to repeat herein the evidence which makes this clear.

Certain exhibits were received in evidence over objection. The defendant, as to each of them, insists that this was error. While some of them might well have been rejected, no prejudicial error in their receipt be-

comes apparent. One of the exhibits was a photograph of the deceased after she died. It was offered as a part of the chain of identification. It contained nothing in appearance which amounted to a spectacle. It was clearly admissible for the purpose for which it was offered. It was admissible under the following pronouncement: "Photographs of the person or body of a deceased, proper foundation having been laid, may ordinarily be received in evidence for purposes of identification, or to show the condition of the body, or to indicate the nature or extent of wounds or injuries thereon." Vaca v. State, *supra.* See, also, Mulder v. State, 152 Neb. 795, 42 N. W. 2d 858; Vanderheiden v. State, *supra.*

A group of exhibits was received which included a plat not drawn to scale of the Reizenstein home, a container with shot taken from the body of the deceased, the gun with which the deceased was shot, an empty shotgun shell, a box taken from the Reizenstein home containing 20-gauge shotgun shells, a box containing shotgun shells similar to the shells taken from the Reizenstein home, and an opened shell taken from this box.

The assignments of error indicate that this entire group of exhibits was admitted in evidence and in the discussion we have treated them all as having been admitted. Factually, however, exhibits Nos. 16 and 18, being one box of shells and the opened shell, were never actually received in evidence. They were clearly admissible. In 20 Am. Jur., Evidence, § 717, p. 600, it is said: "It is always proper, when a fact in issue may be explained by the production of an article or object to which testimony relates, to bring such article or object into court and exhibit it to the jury; it may be said, in fact, that this should be done if the circumstances permit." See, also, Morris v. Miller, 83 Neb. 218, 119 N. W. 458, 20 L. R. A. N. S. 907, 131 Am. S. R. 636.

The last two of this group require consideration with

another group of exhibits to which objection was made. After the shooting occurred experiments were made by loading the shotgun with ammunition like or similar to that which caused the death of the deceased and firing it at different distances from a cardboard target. The purpose was to demonstrate the distance of the gun from the deceased when she was shot.

One of the exhibits to which reference has been made was a box containing loaded shells of the kind used in the experiment. The other was one of the opened shells. The other exhibits to which reference has been made were a group of cardboards showing the test patterns.

The evidence as to the pattern, it may well be said, was but an incident neither favorable nor unfavorable to the defendant since it is clearly evident that the deceased was killed by a charge from the gun which before and after the shooting was in the hands of the defendant. The only efficient purpose of the patterns was to show how far the gun was from the deceased when it was fired. The minimum distance testified to by any witness, including the witnesses for the defendant, was that it was 4 to 6 inches away. The pertinence of this is that the defendant contends that the discharge of the gun was caused by the deceased. This evidence was in negation of that contention and in support of the contention that the act of shooting was an act of the defendant. Even at the closest distance the firing mechanism was so far away that the shooting could not have resulted from an act of the deceased.

In Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627, it was said: "This court recognizing the difficulties attending an offer of evidence of illustrative experiments has adopted the rule that in such cases a discretion is conferred upon the trial court and that unless there is a clear abuse of discretion a judgment will not be reversed on account of the admission or rejection of such evidence." See, also, Lillie v.

State, 72 Neb. 228, 100 N. W. 316; Falkinburg v. Prudential Ins. Co., 132 Neb. 831, 273 N. W. 478. It may not well be said that in this instance the court abused its discretion.

As pointed out Randy Reizenstein was a witness on behalf of the State. The defendant objected to him as a witness on the ground that on account of his age he was unable to know and understand the nature of an oath. He was examined as to his competency out of the presence of the jury after which he was allowed to testify. On the question of the competency of a child to testify this court said in Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236: "The question of the competency of such a witness rests largely in the sound discretion of the trial court, whose decisions will not be disturbed in the absence of clear abuse." See, also, Wells v. State, 152 Neb. 668, 42 N. W. 2d 363; Linder v. State, 156 Neb. 504, 56 N. W. 2d 734. From a review of the responses made by this witness to the questions propounded to him on the examination before he was allowed to testify and his testimony before the jury, it does not appear that the trial court abused its discretion in allowing the witness to testify.

On the trial this witness and two others were allowed to testify to quarrels and past threats taking place between the defendant and the deceased. The defendant contends that the court erred in this respect. The general rule is that where a course of hostility has existed and especially if it has continued down to the time of a homicide the evidence thereof is admissible, and the weight of it is for the jury. See, Sharp v. State, 115 Neb. 737, 214 N. W. 643; Wever v. State, 121 Neb. 816, 238 N. W. 736. The conclusion reached is that this evidence was properly admitted.

A doctor, an expert in the field of psychiatry, examined the defendant and was called as a witness for the State. Based on his examination and a history obtained from the defendant he gave testimony which em-

bodied an opinion as to the mental condition of the defendant at the time of the examination. No objection to this is made on this review. Thereafter a hypothetical question was propounded and the witness was asked for his opinion as to the mental condition of the defendant. Objection was made and sustained. Also the witness stated in effect that he could not fairly express an opinion dissociated from his examination. He was then requested to consider both the hypothetical question and his examination and was asked if he had an opinion as to whether the defendant knew the difference between right and wrong at the time the deceased was killed. He answered and gave his opinion. The error assigned is that the hypothetical question did not properly and sufficiently reflect the facts. From an examination of the question and the record it is concluded that the question did reflect properly and sufficiently all of the pertinent facts.

The defendant by assignments of error asserts that the cross-examination of this and two other witnesses was unduly restricted. The record does not so disclose. In no area covered by the record or the testimony of the witnesses on direct examination was the cross-examination unduly restricted.

By another assignment it is contended that the court erred in admitting evidence of witnesses who testified as to business transactions of the defendant on November 30, 1956. This evidence was admitted for the purpose of showing the condition and ability of the defendant to know and understand what he was doing a short time before the deceased was shot. The assignment is not supported by any authority. It is without merit.

The defendant assigns as error the refusal of the court to give a large number of requested instructions. Only a few of the requests require special consideration. One requiring special mention involves a request for an instruction in case the jury found that the shooting resulted from a scuffle. There was no competent evidence

of a scuffle, hence there was no basis for such an instruction.

Another related to a requested instruction relative to accidental discharge of the gun. The instructions given sufficiently and clearly described the benefits which should flow to the defendant from accidental discharge of the gun.

A request was made that the jury be instructed that greater care should be exercised in weighing the testimony of witnesses employed to find evidence against the accused than in weighing the testimony of others. No witnesses were so employed, hence there was no basis for such an instruction.

A request was made that the jury be instructed that if it believed from the evidence that any witness had willfully testified falsely to any material fact that then it was at liberty to entirely disregard all of the testimony of such witness. At one time it was the rule that on such a request a jury should be so instructed. Lee v. State, 147 Neb. 333, 23 N. W. 2d 316. That is no longer true. In Knihal v. State, 150 Neb. 771, 36 N. W. 2d 109, 9 A. L. R. 2d 891, the rule was rejected. In that case it was said: "It is not prejudicial error for the trial court to fail or refuse to give an instruction to a jury based on the maxim, 'He who speaks falsely on one point will speak falsely upon all.'" No prejudicial error was committed in the refusal to give the requested instruction.

As to the remaining requests for instructions which were refused it appears sufficient to say, after careful examination of them, of those given, and of the bill of exceptions, that the matters involved were fully and fairly presented by the instructions given or instructions on them were not warranted by the evidence adduced on the trial and the law pertaining to the issues.

"Instructions are to be considered together to the end that they may be properly understood, and, when so construed, if as a whole they fairly state the law applic-

able to the evidence, error cannot be predicated on the giving of the same." Liakas v. State, 161 Neb. 130, 72 N. W. 2d 677. See, also, Garcia v. State, 159 Neb. 571, 68 N. W. 2d 151; Grandsinger v. State, 161 Neb. 419, 73 N. W. 2d 632.

"An instruction which has no foundation in the evidence upon which to base it, is properly refused." Rhea v. State, 63 Neb. 461, 88 N. W. 789.

By assignments of error it is contended that the court erred in giving certain instructions. The first of these is No. 14. The complaint in this connection does not appear in the assignment but only in the argument. It is urged that by this instruction the jury was told that it could presume malice or intent, and if the defendant was sane it could presume that the defendant intended to kill the deceased.

The instruction is not capable of any such interpretation. Malice is not mentioned. As to intent the following appears: "It is to be arrived at by such just and reasonable deductions and inferences from the facts and circumstances shown by the evidence as the guarded judgment of a cautious person would ordinarily draw therefrom." With this language no fault can be found. The concluding paragraph of the instruction is as follows: "Every sane person is presumed to intend the natural and probable consequences of his voluntary acts." This is the only place in the instruction where presumption is referred to. There was no impropriety in giving it. It had no relation to the intent with which the crime itself was committed. It is a correct statement of legal principle. This court has said: "One is conclusively presumed to intend the obvious and probable consequences of his voluntary act." Peterson v. Wahlquist, 125 Neb. 247, 249 N. W. 678, 89 A. L. R. 747. See, also, State ex rel. Davis v. Banking House of A. Castetter, 110 Neb. 564, 194 N. W. 784.

The next instruction attacked is No. 16. It is stated in argument that the jury was told by this instruction

that "if the defendant knew what he was doing he was criminally responsible for his acts." The instruction does not contain this statement either in tenor or effect. This is the statement of an element taken out of context from the following which is a correct statement of legal principle: "* * * yet if he has the mental capacity to understand what he is doing and to know it is wrong and deserves punishment, he is criminally responsible for his act."

The next and last assignment to which attention will be directed herein contains an assertion that the court erred in submitting the charge of murder in the first degree to the jury.

Earlier in the opinion this question was decided adversely to the defendant, subject to the question of whether or not there were errors of law occurring at the trial, or evidence not at that time referred to, which justified a reversal. No such errors of law or other evidence was found. Accordingly this assignment must be resolved adversely to the defendant.

In the light of the principles announced herein it must be said that no reversible error has been found. The judgment of the district court is affirmed.

AFFIRMED.