State of Nebraska, appellee, v.
Lyle J. Carman, appellant.
___ N.W.2d ___

Filed December 4, 2015.    No. S-15-167.

1. **Constitutional Law: Statutes: Judgments: Appeal and Error.** The constitutionality and construction of a statute are questions of law, which an appellate court resolves independently of the conclusion reached by the lower court.
2. **Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
4. **Criminal Law: Statutes: Intent.** Penal statutes are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. A court must then reasonably or liberally construe the statute to achieve the statute's purpose, rather than construing it in a manner that defeats the statutory purpose.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Reversed and remanded with directions.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ., and Inbody, Judge.

Wright, J.

## NATURE OF CASE

Lyle J. Carman appeals his conviction for "unlawful act manslaughter" under Neb. Rev. Stat. § 28-305 (Reissue 2008). Carman's dump truck struck the rear of a car that had stopped or slowed due to highway construction. The collision forced the car off the highway, causing it to roll, and the driver was killed as a result. The unlawful acts for which Carman was convicted were following too closely and driving too fast for the conditions present. He claims these acts were traffic infractions which were insufficient to sustain his conviction. For the reasons stated below, we reverse, and remand with directions to vacate Carman's conviction and sentence.

## SCOPE OF REVIEW

[1] The constitutionality and construction of a statute are questions of law, which an appellate court resolves independently of the conclusion reached by the lower court. See *State v. Taylor*, 287 Neb. 386, 842 N.W.2d 771 (2014).

[2] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012).

## BACKGROUND

Carman was driving a dump truck on an interstate highway that was closed to one lane eastbound due to construction, and traffic was stop and go. Carman stated that he looked down at his side mirrors and that when he looked up, the victim's car had stopped and he was unable to timely stop. Carman's truck struck the victim's car from the rear, causing it to go off

the Interstate and roll. The driver of the car died as a result of the collision.

Carman was charged and ultimately convicted of manslaughter pursuant to § 28-305, a Class III felony. Section 28-305 codifies what has been referred to as "unlawful act manslaughter" or "involuntary manslaughter." Unlawful act manslaughter is defined as causing the death of another "unintentionally while in the commission of an unlawful act." See § 28-305.

Carman waived his right to a jury trial and proceeded with a bench trial. The district court found him guilty of the unlawful acts of "following too close," under Neb. Rev. Stat. § 60-6,140 (Reissue 2010), and "driving too fa[s]t for [the] conditions," under Neb. Rev. Stat. § 60-6,185 (Reissue 2010). Carman was found not guilty of driving under the influence, reckless driving, and careless driving.

Before trial, Carman raised the issue of being charged with felony manslaughter instead of misdemeanor motor vehicle homicide. Motor vehicle homicide occurs when a person causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of Nebraska law or a city ordinance. See Neb. Rev. Stat. § 28-306 (Cum. Supp. 2014). Carman claimed that he should have been charged with motor vehicle homicide and that § 28-306 was the proper statute if the unintentional killing of another occurred during the operation of a motor vehicle. He claimed that a prosecutor should not be permitted to charge a defendant under the general unlawful act manslaughter statute if the unintentional death was caused by a motor vehicle accident.

In his motion for new trial, Carman alleged that the provisions of § 28-305 were unconstitutional as applied to his conviction. The motion was overruled without discussion or written order. The district court did not expressly address whether the use of traffic infractions as a basis for a felony conviction for manslaughter violated due process, but rejected Carman's arguments by overruling his motion. Carman timely appealed.

## ASSIGNMENTS OF ERROR

Carman argues, summarized and restated, that the district court erred in concluding the evidence was sufficient to convict him of manslaughter. He claims that § 28-306 precludes a conviction for unlawful act manslaughter when the underlying offense is a traffic infraction or other public welfare offense and that, therefore, the evidence was insufficient to convict him of manslaughter.

## ANALYSIS

The issue is whether Carman's traffic infractions were sufficient unlawful acts to support a manslaughter conviction under § 28-305. Carman argues that recent amendments to § 28-306, the motor vehicle homicide statute, demonstrate the Legislature's intent to preclude convictions for manslaughter when an unintentional death results from an unlawful act occurring while operating a motor vehicle. He claims the predicate unlawful acts, which were traffic infractions, were insufficient to sustain his conviction.

[3,4] Our analysis is governed by the following principles. Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. See *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009). Penal statutes are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *Id*. A court must then reasonably or liberally construe the statute to achieve the statute's purpose, rather than construing it in a manner that defeats the statutory purpose. See *Fisher v. Payflex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013). An appellate court will try to avoid, when possible, a statutory construction which would lead to an absurd result. See *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

"A person commits manslaughter if he . . . causes the death of another unintentionally while in the commission of an unlawful act." § 28-305. At the time Carman was charged,

manslaughter was a Class III felony, with a penalty between 1 and 20 years' imprisonment, up to a $25,000 fine, or both.

"A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle *in violation of the law of the State of Nebraska or in violation of any city or village ordinance* commits motor vehicle homicide." § 28-306(1) (emphasis supplied). Motor vehicle homicide is a Class I misdemeanor, but the statute provides for penalty enhancements if the offender is convicted of driving under the influence, reckless or willful reckless driving, or driving under revocation. These predicate offenses enhance motor vehicle homicide to varying degrees of felonies.

Carman opines that "there has always existed, just below the surface, an issue as to what criminal intent or *mens rea* had to be present in the unlawful act to support a manslaughter conviction." Brief for appellant at 21. He claims that a manslaughter conviction cannot be upheld when the unlawful act was an infraction or petty offense. He points out that all prior manslaughter cases involving the use of a motor vehicle evidenced a showing that the driver was impaired or driving recklessly.

While both §§ 28-305 and 28-306 require some kind of unlawful act which proximately causes an unintentional death of another, neither statute defines the type of unlawful act required. The district court acquitted Carman of driving recklessly, pursuant to Neb. Rev. Stat. § 60-6,213 (Reissue 2010), and driving carelessly, pursuant to Neb. Rev. Stat. § 60-6,212 (Reissue 2010). But it found him guilty of following too closely, in violation of § 60-6,140, and driving too fast under the conditions, in violation of § 60-6,185, both traffic infractions.

A traffic infraction is a violation of the Nebraska Rules of the Road. *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003). Neither of the infractions for which Carman was convicted is punishable by incarceration; the infractions carry only a fine. But the district court found that these infractions

were unlawful acts which caused the death of the victim unintentionally and, therefore, constituted the crime of manslaughter.

It is apparent to this court that such traffic infractions are not the type of unlawful acts that were typically considered in connection with the crime of manslaughter. Nevertheless, the State asserts that *any* unlawful act which proximately causes the death of another is sufficient under § 28-305 and that the State could validly exercise prosecutorial discretion to charge the unlawful act as manslaughter. We agree with the State's assertion that it had discretion to elect under which statute to charge Carman. But the election to charge under § 28-305 did not define what unlawful act the State was required to prove in order to sustain the manslaughter conviction. The State's argument that it had discretion to charge Carman with manslaughter or motor vehicle homicide does not answer the question. Prosecutorial discretion does nothing to define what unlawful act is required for manslaughter.

We have repeatedly held that the same conduct may constitute both involuntary manslaughter and motor vehicle homicide and that the State has prosecutorial discretion to pursue charges for either offense. But the State's argument misapplies prosecutorial discretion as a basis for its position that traffic infractions that would sustain a conviction for misdemeanor motor vehicle homicide would also sustain a conviction for felony manslaughter. This argument ignores a fundamental difference between those unlawful acts required for manslaughter and those which would sustain a conviction for misdemeanor motor vehicle homicide. A public welfare offense which would sustain misdemeanor motor vehicle homicide does not require mens rea. In contrast, the predicate unlawful act for manslaughter must have a mens rea.

Although §§ 28-305 and 28-306 do not refer to mens rea or criminal intent in the unlawful act, the distinction between the two statutes cannot be ignored. Because of the different context in which the offenses of manslaughter and motor vehicle homicide arise, §§ 28-305 and 28-306 are clearly

distinct crimes and must be interpreted differently. Whereas the offense of unlawful act manslaughter or involuntary manslaughter has its origins in common law, motor vehicle homicide does not.

In *State v. Perina*, 282 Neb. 463, 804 N.W.2d 164 (2011), we examined the requirements for misdemeanor motor vehicle homicide in the context of the requirement of criminal intent. The deceased was killed when a dump truck driven by the defendant ran a red light and struck the decedent's car. The defendant was charged with misdemeanor motor vehicle homicide and violation of a traffic control device. We compared the distinct interpretations of public welfare offense penal statutes with those which were codifications of common-law offenses. We concluded that misdemeanor motor vehicle homicide was a public welfare offense which did not require proof of mens rea.

In discussing the absence of mens rea in penal statutes codifying common-law offenses, we reiterated the rule for statutory interpretation of criminal statutes. "'"[T]he existence of a criminal intent is regarded as essential even though the terms of the statute do not require it, unless it clearly appears that the legislature intended to make the act criminal without regard to the intent with which it was done."'" *Id.* at 470, 804 N.W.2d at 170 (quoting *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989), *overruled on other grounds, State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994)). In applying this rule to misdemeanor motor vehicle homicide, we held that misdemeanor motor vehicle homicide was a public welfare offense without common-law origins and that, therefore, the absence of the mens rea element in the statute indicated that the Legislature intended to dispense with the element.

Our reasoning in *Perina* was based on the U.S. Supreme Court's analysis in *Morissette v. United States*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952), and its progeny. In *Morissette*, the defendant was convicted of violating 18 U.S.C. § 641 (2012), which provided, then as now, that whoever steals or knowingly converts U.S. government property

may be punished by a fine or imprisonment. In a rural area, the defendant found spent bomb casings and sold them. He explained that he had no intention of stealing anything and thought the casings had been abandoned. He was convicted, because the trial court concluded that the statute required no element of mens rea and that any necessary intent could be presumed from the defendant's act.

In reversing the lower courts' decisions, the U.S. Supreme Court discussed the principle that some crimes, which became known as public welfare offenses, can involve no mental element or criminal intent, but consist only of forbidden acts or omissions. Such offenses did not arise from the common law, but, rather, from changing societal circumstances and did not require any element of intent. Such offenses were not in the nature of positive aggressions or invasions, with which the common law so often dealt, but were in the nature of neglect where the law requires care, or inaction where it imposes a duty. One accused of such offenses usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Thus, the type of legislation whereby penalties serve as effective means of regulation dispenses with the conventional requirement for criminal intent. The Court found that 18 U.S.C. § 641 was essentially a theft offense codified from the common law and, therefore, required proof of criminal intent or mens rea.

The U.S. Supreme Court revisited *Morissette* decades later in *Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994). In *Staples*, the Court reiterated that a statute's silence on the mens rea of an offense did not suggest legislative intent to dispense with the element. "On the contrary, we must construe the statute in light of the background rules of the common law . . . in which the requirement of some *mens rea* for a crime is firmly embedded." *Staples v. United States*, 511 U.S. at 605. Furthermore, in noting that offenses requiring no mens rea are disfavored, the Court concluded that

a general characteristic of public welfare offenses is that they do not carry heavy penalties, stating:

> In rehearsing the characteristics of the public welfare offense, we, too, have included in our consideration the punishments imposed and have noted that "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." . . .
>
> Our characterization of the public welfare offense in *Morissette* hardly seems apt, however, for a crime that is a felony . . . . After all, "felony" is, as we noted in distinguishing certain common-law crimes from public welfare offenses, "'as bad a word as you can give to man or thing.'" . . . In this view, absent a clear statement from Congress that *mens rea* is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with *mens rea*.

*Staples v. United States*, 511 U.S. at 617-18 (quoting *Morissette v. United States, supra*).

In *State v. Perina*, 282 Neb. 463, 804 N.W.2d 164 (2011), we adopted the Court's rules of statutory interpretation regarding the absence of mens rea in penal statutes. Moreover, we adopted the Court's characterization of public welfare offenses as generally carrying relatively small penalties. We stated:

> [I]f the statute "omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent."

*State v. Perina*, 282 Neb. at 470, 804 N.W.2d at 170 (quoting *Holdridge v. United States*, 282 F.2d 302 (8th Cir. 1960)). Thus, we concluded that although motor vehicle homicide

bears some relationship to manslaughter, it was more directly related to the traffic offenses upon which it was based. See *State v. Perina, supra*. Traffic violations were expressly identified in *Morissette v. United States*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952), as an example of public welfare offenses not taken from the common law, and, therefore, not requiring mens rea.

Applying our reasoning in *Perina* to the case at bar, we conclude that public welfare offenses such as traffic infractions which do not contain the element of criminal intent cannot support convictions for manslaughter. Section 28-305 is a codification of a common-law offense of manslaughter, and the existence of criminal intent is regarded as essential even though the terms of the statute do not expressly require it. There is no indication that the Legislature intended to dispense with the State's requirement to show mens rea in the predicate unlawful act for involuntary manslaughter.

Unlike misdemeanor motor vehicle homicide, a charge of manslaughter cannot be supported when the predicate unlawful act is a public welfare offense which contains no mens rea. In order to sustain a conviction for involuntary manslaughter or unlawful act manslaughter under § 28-305, the State must prove beyond a reasonable doubt that the defendant acted with the requisite mens rea in committing the unlawful act.

Other courts have reached similar conclusions in the context of their own involuntary manslaughter statutes. Florida appellate courts have held that the commission of traffic infractions is not sufficient, without more, to support a conviction for culpable negligence manslaughter, which depends on the extreme character of the conduct itself, not on its mere illegality. See *Logan v. State*, 592 So. 2d 295 (Fla. App. 1991). See, also, *Behn v. State*, 621 So. 2d 534 (Fla. App. 1993) (holding that operation of motor vehicle with deficient brakes, even when coupled with traffic infraction, does not rise to level of criminality required to support conviction of manslaughter).

Similarly, Virginia appellate courts have held that the operation of a motor vehicle in violation of a safety statute, amounting to mere negligence proximately causing accidental death, is not sufficient to support the conviction of involuntary manslaughter. See, *Jenkins v. Commonwealth*, 220 Va. 104, 255 S.E.2d 504 (1979) (defendant driving southbound down middle of unmarked road with lights on low beam saw pedestrian in northbound lane ahead and applied brakes but hit victim); *King v. Commonwealth*, 217 Va. 601, 231 S.E.2d 312 (1977) (inadvertent failure to turn on white headlights, rather than amber running lights, in violation of statute); *Lewis v. Commonwealth*, 211 Va. 684, 179 S.E.2d 506 (1971) (failing to keep proper lookout, but no evidence of speeding, drinking, or recklessness); *Tubman v. Commonwealth*, 3 Va. App. 267, 348 S.E.2d 871 (1986) (failing to keep proper lookout and to yield right of way to motorcycle approaching on public highway which motorist was entering from private road).

North Carolina appellate courts have held that whereas a defendant may be convicted under the state's "Death by Vehicle" statute, see N.C. Gen. Stat. § 20-141.4(a2) (2007), if the death proximately results from the violation of a traffic statute or ordinance, such violations by themselves are not sufficient to convict a person of the common-law offense of involuntary manslaughter. See, *State v. Lackey*, 71 N.C. App. 581, 323 S.E.2d 32 (1984); *State v. Freeman*, 31 N.C. App. 93, 228 S.E.2d 516 (1976) (superseded by statute as stated in *State v. Davis*, 198 N.C. App. 443, 680 S.E.2d 239 (2009)).

The State claims that to convict for involuntary manslaughter, it must establish only that a defendant acted negligently in committing the predicate unlawful act. This proposed interpretation of § 28-305 would make involuntary manslaughter a de facto strict liability crime. And this is demonstrated by the State's attempt to use Carman's traffic infractions—both public welfare offenses—as the underlying unlawful acts.

Even if we accept this argument, Carman's conviction still cannot be upheld. The State must prove each element of the criminal offense beyond a reasonable doubt. *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). Following a bench trial, Carman was found not guilty of driving "carelessly or without due caution so as to endanger a person or property." See § 60-6,212. The district court found Carman guilty of following too closely, pursuant to § 60-6,140, and driving too fast for the conditions, pursuant to § 60-6,185. We have held that violation of a statute is not negligence as a matter of law, but is only *evidence* of negligence to be considered with all other evidence in the case. *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 713 N.W.2d 471 (2006). If negligence were the mens rea required to convict for manslaughter, the district court was required to find beyond a reasonable doubt that Carman acted negligently. It did not do so.

Our analysis points us toward the conclusion that momentary inattentiveness and minor traffic violations do not involve the culpability or mens rea required to convict one of felony manslaughter. This rationale was espoused more than 70 years earlier when it was observed that the term "manslaughter" imports a degree of brutality which jurors generally do not care to cast upon a merely negligent driver, and society is often unwilling to condemn as a felon one who is guilty only of some act of negligence, even though that act has resulted in the death of another. See Frank A. Karaba, Note, *Negligent Homicide or Manslaughter: A Dilemma*, 41 J. Crim. L. & Criminology 183 (1950). Moreover, "[t]o inflict substantial punishment upon one who is morally entirely innocent, who caused injury through reasonable mistake or pure accident, would so outrage the feelings of the community as to nullify its own enforcement." Francis Bowes Sayre, *Public Welfare Offenses*, 33 Colum. L. Rev. 55, 56 (1933).

In *State v. Perina*, 282 Neb. 463, 804 N.W.2d 164 (2011), we cited to the Oregon Supreme Court's explanation of its negligent homicide statute. The Oregon court found that the statute was essentially a police regulation. It concluded that

"the [Oregon] legislature did not intend that any form of moral culpability should be an element of the offense," because "[t]he crime created by the act is not one that casts great stigma upon those convicted, nor is the penalty prescribed by the act so great that its imposition upon those who had no evil purposes tends to shock the sense of natural justice."

*Id*. at 474, 804 N.W.2d at 172 (quoting *State of Oregon v. Wojahn*, 204 Or. 84, 282 P.2d 675 (1955)).

In enacting the motor vehicle homicide statute, § 28-306, the Legislature provided that only certain acts would be treated as felonies and that all other violations of the law which result in the unintended death of another while engaged in the operation of a motor vehicle were Class I misdemeanors. The Legislature described what specific acts under § 28-306 would result in a felony conviction. But this does not mean that the State was relieved of its burden to establish criminal intent if it elected to charge Carman under § 28-305.

Carman's conviction for public welfare offenses which required no mens rea was insufficient to support his conviction for unlawful manslaughter. Unless the Legislature expressly dispenses with the element of criminal intent, or mens rea, from the offense of manslaughter, our rules in construing criminal statutes require the State to prove such intent. See *State v. Perina, supra*. This conclusion does not require us to define precisely what criminal intent is required for involuntary manslaughter. However, sources examining the subject almost invariably agree that more than ordinary negligence in the civil sense is required to support such convictions.

Decades ago, the Kansas Supreme Court carefully reviewed the common-law background of manslaughter and concluded that "it came to be thoroughly understood that the system of thought known as the common law did not sanction conviction of a man of manslaughter resulting from negligent conduct, unless his conduct was accompanied by a wrong mental attitude having the qualities of recklessness." *State*

*v. Custer*, 129 Kan. 381, 387, 282 P. 1071, 1075 (1929). The court explained:

> We are familiar in civil cases with the kind of conduct which will authorize punitive damages, and will prevent interposition of the defense of contributory negligence. It is supposed to involve fault, just as guilt of crime subjecting the offender to punishment was supposed to involve a certain "wickedness." It is regarded as displaying greater culpability than negligence. The higher degree of culpability was essential to common-law manslaughter resulting from negligence.

*Id*. at 394, 282 P. at 1078.

Adopting the Kansas court's reasoning, the South Dakota Supreme Court similarly held that ordinary negligence was insufficient to sustain a conviction for manslaughter at common law. In construing South Dakota's manslaughter statute, the court held:

> [T]his statute which we are now considering was enacted originally with the purpose and intent of codifying the common law on the subject, and . . . the common law required that negligence to be sufficient to support a criminal action must be something more than mere inadvertence. There must be some action from which the jury might reasonably infer the mens rea. The statute has described this action as "culpable."

*State v. Bates*, 65 S.D. 105, 108, 271 N.W. 765, 766 (1937). The court described culpable negligence as an intentional act or omission which the defendant "consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce." *Id*. at 109, 271 N.W. at 767.

Similarly, in reviewing the mens rea required to convict for involuntary manslaughter, the Michigan Supreme Court held:

> [U]nder the common law, one is not criminally responsible for death from negligence unless the negligence is so great that the law can impute a criminal intent. If

death ensues from negligence which shows a culpable
indifference to the safety of others, the negligence is said
to be gross or wanton or wil[l]ful, and is equivalent to
criminal intent, a necessary element of every common-
law crime. One whose acts cause death under such
circumstances is guilty of involuntary manslaughter or
common-law negligent homicide.

*People v. Campbell*, 237 Mich. 424, 428, 212 N.W. 97, 99
(1927).

The New Mexico Supreme Court held that careless driv-
ing was insufficient to show criminal negligence required to
convict under the state's manslaughter statute, which was a
codification of the common-law offense. The court stated:
"'Mere negligence is not sufficient. It may be sufficient to
compel the driver to respond in damages. However, when it
comes to responding to an accusation of involuntary man-
slaughter, with the possibility of a penitentiary sentence,
a different rule is called into play.'" *State v. Yarborough*,
122 N.M. 596, 930 P.2d 131, 135 (1996) (quoting *State v.
Sisneros*, 42 N.M. 500, 82 P.2d 274 (1938)). *The court noted
a clear majority of jurisdictions require that the predicate
offense for involuntary manslaughter involve criminal negli-
gence or recklessness.*

One commentator noted: "Tests of criminal culpability nec-
essary to sustain [manslaughter] convictions are many and
varied. But it is generally agreed that slight negligence or
even 'ordinary' or 'civil' negligence is not sufficient to sustain
manslaughter convictions." Frank A. Karaba, Note, *Negligent
Homicide or Manslaughter: A Dilemma*, 41 J. Crim. L. &
Criminology 183, 183-84. The courts look for a degree of care-
lessness which might be labeled "'willful' or 'wanton' or
'gross or culpable.'" *Id*. at 184.

Another commentator observed that courts around the coun-
try generally use one or more of six terms to describe the
level of negligence required to convict a defendant of involun-
tary manslaughter by unlawful act: (1) criminal, (2) culpable,

(3) gross, (4) willful, (5) wanton, or (6) reckless. James J. Robinson, *Manslaughter by Motorists*, 22 Minn. L. Rev. 755 (1938). He noted that these terms were generally used and treated synonymously by most courts, but asserted that the most effective term to describe the mens rea for manslaughter is "reckless," or heedless regard for consequences. *Id*.

For more than a century, our case law has used nearly all of these six terms. This court has not been consistent in its language and decisions as to what criminal intent or mens rea is required for an unlawful act to support a conviction for manslaughter. In *Schultz v. State*, 89 Neb. 34, 46, 130 N.W. 972, 977 (1911), when considering what is required to convict for manslaughter, we held:

> "One may be criminally responsible for the negligent operation of an automobile. A person is guilty of *criminal negligence . . .* when the breach of duty is *so flagrant as to warrant an implication that the resulting injury was intended*; that is, when his negligent conduct is incompatible with a proper regard for human life. Negligence is the gist of the offense, and, *in the absence of recklessness or of want of due caution, there is no criminal liability*. Actual intent is not an essential element of the offense. It is enough if there is shown a negligent and reckless indifference of the lives and safety of others."

(Emphasis supplied.) Thus, we used both the legal terms "negligent" and "reckless," but we clearly described a culpability higher than ordinary negligence for civil damages.

Shortly after *Schultz*, in upholding a manslaughter conviction based on child neglect, we considered whether the defendant was "culpably negligent" or "criminally negligent." See *Stehr v. State*, 92 Neb. 755, 759, 761, 139 N.W. 676, 678 (1913). Although we did not define what made an act culpably or criminally negligent, we noted, "It is not a slight failure in duty that would render him criminally negligent, but a great failure of duty undoubtedly would." *Id*. at 759, 139 N.W. at 678. We later held:

We believe the rule to be that, though the act, made unlawful by statute, is an act merely *malum prohibitum* and is ordinarily insufficient, still, when such an act is accompanied by negligence or further wrong, so as to be, *in its nature, dangerous, or so as to manifest a reckless disregard for the safety of others*, then it . . . may constitute involuntary manslaughter.

*Thiede v. State*, 106 Neb. 48, 53, 182 N.W. 570, 572 (1921) (emphasis supplied).

Years later, we affirmed a manslaughter conviction upon finding that a jury instruction containing reference to driving an automobile in an unlawful, reckless, careless, and negligent manner, instead of charging in regard to driving on the wrong side of the road, did not constitute reversible error. See *Crawford v. State*, 116 Neb. 125, 216 N.W. 294 (1927). In that case, the defendant was found to have been driving while intoxicated and driving on the wrong side of the road.

In *Cowan v. State*, 140 Neb. 837, 2 N.W.2d 111 (1942), we affirmed a manslaughter conviction of a defendant who was found to have been driving while intoxicated at a high rate of speed. We stated:

Our conclusion is that the evidence is sufficient to sustain the finding of the jury that plaintiff in error was guilty of *such gross negligence as to indicate a wanton disregard of human life*. Such negligence is criminal in its character, and where it results in a death will sustain a conviction for manslaughter.

*Id*. at 843, 2 N.W.2d at 114-15 (emphasis supplied).

To support its argument that § 28-305 is unconcerned with the nature of the unlawful act, the State relies on a series of cases which largely omit the requirement that an act be criminally, culpably, or grossly negligent or that the defendant's conduct is willful, wanton, or reckless. In *Benton v. State*, 124 Neb. 485, 247 N.W. 21 (1933), the defendant was convicted of manslaughter after he was found to have negligently driven an automobile, while intoxicated, into the rear of a car on

the highway, resulting in the death of a passenger of that car. We stated: "When one drives an automobile in violation of law pertaining to the operation of such vehicles on the public highway and in so doing, as a result of the violation of law, causes death to another is guilty of manslaughter. This rule applies to one driving while intoxicated." *Id.* at 488, 247 N.W. at 23.

In *Schluter v. State*, 153 Neb. 317, 44 N.W.2d 588 (1950), we upheld the defendant's conviction for manslaughter after causing the death of another while intoxicated, operating his vehicle at a reckless speed, and driving on the wrong side of the highway. In *Hoffman v. State*, 162 Neb. 806, 77 N.W.2d 592 (1956), the defendant's vehicle collided with the rear end of a truck, and a passenger in the defendant's vehicle was killed. The defendant was intoxicated at the time of the collision. We stated that although the jury found the defendant was grossly negligent, the State was not required to show gross negligence to convict him.

But the State's reliance on these cases is misplaced. Each involved more than mere traffic infractions, which have no mens rea. They almost invariably involved driving while intoxicated, driving recklessly, or both. These actions would establish that the unlawful act was done voluntarily and intentionally and was not the result of mistake, accident, or momentary inattention. And we are unaware of any Nebraska cases that involved a conviction for manslaughter where the predicate unlawful acts were mere traffic infractions without any showing of driving while intoxicated or some other reckless act.

*State v. Burnett*, 254 Neb. 771, 579 N.W.2d 513 (1998), is the exception, but it is distinguishable from the case at bar. In that case, the defendant entered a plea of no contest to the information charging him with manslaughter under § 28-305 for killing the victim while operating a motor vehicle in an unlawful manner. Following an unsuccessful direct appeal and denial of his postconviction action, the case reached this court

on his petition for further review. The defendant claimed that although he pled no contest to manslaughter under § 28-305, a Class III felony, his attorney should have argued for a sentence in accordance with § 28-306. He claimed ineffective assistance of counsel because of his attorney's failure to argue for a sentence in the range prescribed by § 28-306. We denied relief, because he pled to and was convicted of manslaughter under § 28-305 and could not be sentenced for motor vehicle homicide under § 28-306.

Furthermore, with the exception of *Burnett*, at the time of the above-mentioned cases, the statute for motor vehicle homicide did not exist. It was considered an amelioration of the penalty provision of the manslaughter statute. See *Birdsley v. State*, 161 Neb. 581, 74 N.W.2d 377 (1956). Neb. Rev. Stat. § 39-669.20 (Reissue 1984) provided:

> Any person, convicted of manslaughter or mayhem resulting from his operation of a motor vehicle, or of motor vehicle homicide, shall be (1) fined in a sum not exceeding five hundred dollars, (2) imprisoned in the county jail not to exceed six months, or (3) both so fined and imprisoned.

Persons convicted of manslaughter while operating motor vehicles in violation of the law were subject to this ameliorated penalty. In 1978, manslaughter and motor vehicle homicide were made into two separate and distinct offenses under different statutes and with different penalties. See 1977 Neb. Laws, L.B. 38, §§ 20 and 21 (operative July 1, 1978).

Our holding in *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986), *disapproved on other grounds, State v. Wright*, 261 Neb. 277, 622 N.W.2d 676 (2001), and *State v. Wright, supra*, that the State has prosecutorial discretion to charge a person for either manslaughter or motor vehicle homicide as the result of an unintentional death arising from an unlawful act during the operation of a motor vehicle remains unaffected by our decision in the case at bar. We noted that "'[i]t is not uncommon for an act to constitute a violation of more than one crime

. . . .'" *State v. Wright*, 261 Neb. at 288, 622 N.W.2d at 683 (quoting *State v. Roth, supra*). Where a single act violates more than one statute, a prosecutor is free to prosecute under any statute he chooses, so long as the selection is not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *State v. Roth, supra*.

But in exercising its discretion to charge under one offense or another, the State must prove each element of that offense beyond a reasonable doubt. See *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). When the State charged Carman with manslaughter, it was required to show mens rea. It failed to do so. The traffic infractions upon which Carman's manslaughter charge were predicated were public welfare offenses. Therefore, they did not establish the required element of mens rea.

Because the State did not prove that Carman acted with the mens rea required to convict him under § 28-305, we need not review the constitutional challenges to his conviction.

## CONCLUSION

For the reasons stated above, we reverse the judgment of the district court and remand the cause with directions to vacate Carman's conviction and sentence under § 28-305.

REVERSED AND REMANDED WITH DIRECTIONS.

STACY, J., not participating.