Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/04/2022 09:05 AM CDT

**State of Nebraska, appellee, v.
Joel A. Cerros, appellant.**

___ N.W.2d ___

Filed August 12, 2022.    No. S-21-527.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

4. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

5. **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.

6. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

7. **Witnesses: Trial.** A witness may not give an opinion as to a defendant's guilt or how the case should be decided, but, rather, must leave the

conclusions to be drawn by the trier of fact, because such opinions are not helpful.

8. **Convictions: Intent.** Reckless driving is not a mere traffic infraction or public welfare offense; it requires the necessary mens rea to be the unlawful act to support a conviction for manslaughter.

9. **Lesser-Included Offenses: Jury Instructions: Evidence.** A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

10. **Homicide: Lesser-Included Offenses: Jury Instructions.** Where murder is charged, a court is required to instruct on lesser degrees of homicide where appropriate, but in other circumstances, a court must instruct on a lesser-included offense only if requested to do so, and failure to instruct on a lesser-included offense cannot be considered error if the defendant did not request the instruction.

Appeal from the District Court for Butler County: ROBERT R. STEINKE, Judge. Affirmed.

Robert W. Kortus, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Joel A. Cerros appeals his conviction in the district court for Butler County for manslaughter, with reckless driving as the predicate unlawful act. Cerros claims that the district court erred when it allowed a law enforcement officer to testify that driving on the wrong side of the road could be a sign of reckless driving. Cerros also claims that there was insufficient evidence to support his conviction for manslaughter and, for

the first time on appeal, claims that the district court erred when it failed to instruct the jury on careless driving as a lesser-included offense. We affirm Cerros' conviction.

## STATEMENT OF FACTS

On June 20, 2020, Cerros was involved in a traffic accident on U.S. Highway 81 south of Columbus, Nebraska. The car driven by Cerros was traveling south and was heading in the wrong direction (wrong lane) when it collided with a motorcycle traveling north. The motorcyclist died as a result of injuries sustained in the collision.

The State theorized that Cerros was under the influence of marijuana at the time of the accident. The State therefore charged Cerros with (1) motor vehicle homicide with driving under the influence (DUI) as the predicate violation of law, (2) DUI, (3) manslaughter with reckless driving as the predicate unlawful act, and (4) possession of drug paraphernalia. Cerros pled no contest to the possession charge and went to trial by jury on the remaining counts. The jury acquitted Cerros of DUI and motor vehicle homicide but found him guilty of manslaughter. Given the homicide based on DUI acquittal, our analysis on appeal is focused on manslaughter.

The evidence at trial included testimony by witnesses, including other motorists who arrived at the scene shortly after the accident as well as rescue and law enforcement personnel who later arrived at the scene. Relevant to the charge of manslaughter based on reckless driving, various witnesses testified that Cerros' car was in the wrong lane. For example, one rescue worker testified that the car "was facing south, but was in the northbound lane . . . in the shoulder area" and that the "motorcycle was directly in front of the vehicle."

The State presented testimony by an accident reconstructionist who testified regarding his investigation of the accident in this case. He stated in his report that "Cerros was driving southbound on Highway 81," that "Cerros crossed into the northbound lanes of travel," and that the northbound motorcycle collided with the southbound vehicle driven by Cerros.

He concluded that the "actions of . . . Cerros resulted in the death" of the motorcyclist.

The State also elicited testimony regarding the DUI and motor vehicle homicide charges, including observations of witnesses regarding Cerros' condition shortly after the accident. Among the witnesses the State questioned in this regard was Devin Betzen, a sheriff's deputy who was dispatched to the scene of the accident. During initial general questioning of Betzen regarding his experience in law enforcement, the State asked Betzen, "[W]hat do you look for in determining signs of impairment, just in general cases?" Betzen responded by listing physical signs such as bloodshot, watery eyes, slurred speech, slow deliberate movement, and poor finger-to-thumb dexterity. The State then asked, "What about driving habits?" Betzen responded by listing actions such as speeding, driving on the shoulder of the road, and crossing centerlines. The State suggested, "Driving the wrong way . . . down a highway?" and Betzen responded in the affirmative.

During cross-examination of Betzen, Cerros elicited testimony related to his defense theory that at the time of the collision, he had crossed the centerline because he was preparing to turn left onto a county road that was a short distance ahead. Betzen testified that Cerros' parents' house was approximately 4 miles from the site of the accident and that in order to go to their house, Cerros would have had to have turned left onto a county road that was approximately 15 to 20 feet south past the site of the collision. At the end of cross-examination, Betzen agreed that in the report he prepared after his investigation, he did not state that Cerros had shown any signs of impairment or that he had "found any signs of impairment by his driving."

The State then began its redirect of Betzen with this exchange: "[State:] Deputy Betzen, driving on the wrong side of the road could be a sign of impairment; is that correct? [Betzen:] That's correct. [State:] Could be a sign of reckless driving; is that correct? [Betzen:] That's correct."

Cerros objected on the basis that the State's question "[c]alls for an answer that the jury has to decide. Ultimate issue, Your Honor." The court overruled Cerros' objection, and it stated, "And the answer was 'that's correct.' And the question was 'it could be a sign.' All right." The State then continued with a different line of questioning.

Other evidence presented by the State included testimony by emergency personnel that the motorcyclist had died at the scene of the accident. The State also presented testimony by the pathologist who conducted the autopsy on the motorcyclist. The pathologist testified that the motorcyclist had sustained various injuries, including injuries to the head, chest, and abdomen. The pathologist opined that the cause of death was blunt force trauma to the head, chest, and abdomen and that such injuries were consistent with the motorcycle having collided with the automobile.

Cerros moved for a directed verdict at the close of the State's evidence. The district court overruled the motion and made certain remarks with regard to the manslaughter charge. The court noted that manslaughter was charged with reckless driving as the predicate unlawful act. The court stated that reckless driving was a misdemeanor offense and not a traffic infraction or a public welfare offense. The court stated that evidence offered by the State showed that Cerros "was operating his motor vehicle over a period of time and through a term of space completely in the wrong lane of a major U.S. highway," and the court determined that "[s]uch evidence viewed most favorably to the State would establish that the unlawful act of reckless driving was done voluntarily and intentionally and was not the result of mistake, accident or momentary inattention."

In his defense, Cerros presented evidence including testimony by an expert in pharmacology and toxicology who generally testified regarding studies that showed no increased risk of crashes for drivers who had used marijuana. He also testified that he had viewed videos of Cerros taken at the

scene of the accident, on the ride to the hospital, and at the hospital, and he opined that he did not see any indicators that Cerros was under the influence of marijuana at that time. Cerros also presented testimony by his mother, his father, and his sister to the effect that on the evening of June 20, 2020, Cerros' parents were hosting a family gathering at their house north of Rising City, Nebraska, and that they were awaiting Cerros' arrival.

At the jury instruction conference, the court presented its proposed instructions. With respect to manslaughter, the elements instruction, instruction No. 3, given by the court, provided that

> the elements of the State's case are:
>
> 1. That the defendant, . . . Cerros, caused the death of [the motorcyclist];
>
> 2. That the defendant did so while operating a motor vehicle upon the public streets or highways of the State of Nebraska;
>
> 3. That the defendant did so unintentionally while in the commission of an unlawful act, to-wit: reckless driving as defined in Instruction No. 4; and
>
> 4. That the defendant did so on or about June 20, 2020, in Butler County, Nebraska.

Instruction No. 4 provided:

> The material elements of reckless driving are:
>
> On or about June 20, 2020, in Butler County, Nebraska, the defendant, . . . Cerros, drove a motor vehicle upon the streets or highways of the State of Nebraska in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property.

Instruction No. 6 included definitions of various terms and defined "reckless" as "the disregard for or indifference to the safety of another or for the consequences of one's act. 'Wanton' and 'reckless' are treated synonymously." The court asked the parties whether they had objections to its proposed instructions, and the State had no objections.

Cerros, however, raised objections to the court's instructions and proposed certain instructions of his own. Cerros first raised objections with regard to the instructions for motor vehicle homicide, and the court overruled his objections. Cerros then turned to the instructions on the charge of manslaughter. Cerros first stated that he asked that the predicate unlawful act for manslaughter should "be for willful reckless driving . . . instead of reckless driving" and that the court "give the definition for willful reckless driving." Cerros next stated that he was "asking for the lesser included offense of reckless driving under [Neb. Rev. Stat. §] 60-6,212 or 60-6,213 because the jury theoretically could find there was no proximate cause, but he was reckless driving or willful reckless driving."

Cerros also requested two additional instructions that he asserted were based on *State v. Carman*, 292 Neb. 207, 872 N.W.2d 559 (2015). Cerros' first proposed instruction stated: "'Traffic infractions are public welfare offenses which do not require a showing of criminal intent and therefore, are insufficient by themselves to support a conviction for unlawful act manslaughter or involuntary manslaughter.'" His second proposed instruction stated: "'Criminal intent is required to support a conviction for unlawful act manslaughter or involuntary manslaughter under this Count.'" Cerros asserted that the two instructions were necessary "to make it clear to the jury that he has to have criminal intent and that traffic infractions do not qualify, because the jury could easily find that there was a traffic infraction at this point, he was negligent, but not reckless."

The court overruled Cerros' objections and rejected his proposed instructions. The court stated that "reckless driving is not a public welfare offense and not a mere traffic infraction, and it has sufficient mens rea such that it can be the underlying unlawful offense for a manslaughter charge." Regarding Cerros' request to instruct the jury that criminal intent is required to support a conviction for manslaughter, the court noted that it would instruct the jury on the elements of

reckless driving and provide a definition of "reckless" and that those instructions would set forth "the mens rea that would be required." The court stated that Cerros could argue the absence of the required mens rea for reckless driving during his closing argument.

In his closing argument, Cerros first focused on the charges of motor vehicle homicide and DUI. He then turned to the charge of manslaughter. Cerros argued, inter alia, that if the jurors thought that "he was driving negligently or carelessly . . . he is not guilty of driving recklessly causing [the motorcyclist's] death." Cerros then argued that his driving might have been negligent or careless but not reckless, and he asserted that he was "going into that left lane to turn at the first turnoff" and misjudged how close the oncoming headlights of the motorcycle were.

After closing arguments, the court gave its jury instructions and submitted the case to the jury. During deliberations, the jury submitted a written question to the court which asked, "What is the definition of negl[i]gent driving?" After discussion with counsel, the court responded by telling the jury that it was to make its determinations based on the evidence and the instructions that had been given.

The jury acquitted Cerros of motor vehicle homicide and DUI, but it found him guilty of manslaughter based on reckless driving. The court thereafter sentenced Cerros to imprisonment for 8 to 12 years for the manslaughter conviction.

Cerros appeals his conviction for manslaughter.

## ASSIGNMENTS OF ERROR

Cerros claims that the district court erred when it allowed Betzen's testimony that driving on the wrong side of the road could be a sign of reckless driving. Cerros also claims that there was insufficient evidence to support his conviction for manslaughter. Cerros finally claims for the first time on appeal that the district court erred when it did not instruct on careless driving as a lesser-included offense.

## STANDARDS OF REVIEW

[1-3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*. A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017).

[4] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

[5,6] Whether jury instructions given by a trial court are correct is a question of law. *Id*. On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id*.

## ANALYSIS

*District Court Did Not Err When It Allowed*
*Betzen's Testimony Regarding Driving*
*on the Wrong Side of the Road.*

Cerros first claims that the district court erred when it allowed Betzen's testimony to the effect that driving on the

wrong side of the road could be a sign of reckless driving. Cerros argues that Betzen's testimony constituted an impermissible opinion as to Cerros' guilt on a key element of the manslaughter charge in this case. Because Betzen did not express an opinion regarding Cerros' guilt, we conclude that the district court did not err when it allowed the testimony.

[7] Cerros cites *State v. Rocha*, 295 Neb. at 733, 890 N.W.2d at 194, in which we held that under Nebraska's rules of evidence, including Neb. Evid. R. 701 and 702, Neb. Rev. Stat. §§ 27-701 and 27-702 (Reissue 2016), regarding opinion testimony, and Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), regarding relevancy and unfair prejudice, "a witness may not give an opinion as to a defendant's guilt or how the case should be decided, but, rather, must leave the conclusions to be drawn by the trier of fact, because such opinions are not helpful." We reasoned that such determinations are within the province of the trier of fact and that testimony that usurps the role of the trier of fact is not helpful and thus is improper opinion testimony under rules 701 and 702. We further reasoned that the risk of unfair prejudice is heightened when such an opinion is given by a law enforcement officer.

When it overruled Cerros' objection to Betzen's testimony, the district court emphasized that the question was whether driving on the wrong side "[c]ould be" a sign of impaired driving or reckless driving and that Betzen merely answered, "That's correct." We read the court's comment to indicate that the court did not think that Betzen's answer constituted an opinion as to Cerros' guilt. We agree with that reasoning. Considered in the context of earlier questioning, it appears that the State was asking about the sorts of actions or observations that would lead Betzen to suspect impaired driving or reckless driving as a general matter. The State did not ask for, and Betzen did not give, an opinion as to whether Cerros' actions in this case established that Cerros was guilty of reckless driving.

Under the rules of evidence, it was within the court's discretion to determine whether Betzen's testimony was relevant and whether it resulted in unfair prejudice to Cerros. Because Betzen agreed only in response to an isolated question that as a general matter, driving on the wrong side could be a sign of reckless driving, he did not provide an explicit opinion regarding whether Cerros was guilty of reckless driving. The testimony did not invade the jury's province to make that determination based on all the evidence presented and the law as instructed. We therefore conclude that the district court did not abuse its discretion when it allowed Betzen's testimony that driving on the wrong side of the road could be a sign of reckless driving.

*There Was Sufficient Evidence to Support*
*Cerros' Manslaughter Conviction.*
Cerros next claims that there was not sufficient evidence to support his conviction for manslaughter. He argues that the evidence does not show reckless driving, because at most, it showed a traffic infraction that would not support a conviction for manslaughter. We conclude that the evidence was sufficient to support Cerros' conviction.

Cerros was convicted of manslaughter under Neb. Rev. Stat. § 28-305 (Reissue 2016), which provides in part that "[a] person commits manslaughter if he or she kills another without malice upon a sudden quarrel or causes the death of another unintentionally while in the commission of an unlawful act." In this case, Cerros was charged with manslaughter of the second type, that is, having "cause[d] the death of another unintentionally while in the commission of an unlawful act." The predicate unlawful act was reckless driving as set forth in Neb. Rev. Stat. § 60-6,213 (Reissue 2021), which provides that "[a]ny person who drives any motor vehicle in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property shall be guilty of reckless driving." Neb. Rev. Stat. § 60-6,215 (Reissue 2021) provides that "[e]very person

convicted of reckless driving shall, upon a first conviction, be guilty of a Class III misdemeanor."

Cerros' argument relies on *State v. Carman*, 292 Neb. 207, 216, 872 N.W.2d 559, 565 (2015), in which we held that "public welfare offenses such as traffic infractions which do not contain the element of criminal intent cannot support convictions for manslaughter." We further stated in *Carman* that "momentary inattentiveness and minor traffic violations do not involve the culpability or mens rea required to convict one of felony manslaughter." 292 Neb. at 218, 872 N.W.2d at 567. The defendant in *Carman* was convicted of manslaughter based on traffic offenses of following too closely and driving too fast for the conditions. We concluded that these traffic offenses were public welfare offenses that did not establish the required element of mens rea, and we therefore reversed the defendant's conviction. Cerros argues that in this case, there was not sufficient evidence of the predicate act of reckless driving to support his conviction for manslaughter, because the evidence did not show he possessed the required mens rea for reckless driving, and that at best, it showed he had committed public welfare offenses involving momentary inattentiveness and minor traffic violations.

[8] We note that in *Carman*, we stated that in prior cases in which we had upheld manslaughter convictions based on offenses committed while driving, such cases "involved more than mere traffic infractions, which have no mens rea" and those convictions "almost invariably involved driving while intoxicated, *driving recklessly*, or both." 292 Neb. at 224, 872 N.W.2d at 570 (emphasis supplied). We stated that "[t]hese actions would establish that the unlawful act was done voluntarily and intentionally and was not the result of mistake, accident, or momentary inattention." *Id*. We made clear in *Carman* that reckless driving was not a mere traffic infraction or public welfare offense and that it required the necessary mens rea to be the unlawful act to support a conviction for manslaughter. We therefore reject any argument that reckless driving could

not support Cerros' conviction for manslaughter. Our precedent is consistent with this conclusion.

We read Cerros to argue that, in any event, the evidence in this case does not support a finding that he committed reckless driving and instead that it showed at most that he was driving negligently. He contends that such negligence indicated a traffic infraction that was short of reckless driving and that, under *Carman*, would not support a conviction for manslaughter.

The State charged manslaughter based on reckless driving as the unlawful act. The court's jury instruction setting forth the elements of manslaughter stated, inter alia, that the jury must find that Cerros caused the death of the motorcyclist while in the commission of the unlawful act of reckless driving, and a separate instruction set forth the elements of reckless driving as being that Cerros drove a vehicle "in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property." The instruction therefore tracked the statute defining reckless driving and included the mens rea we found sufficient in *Carman*.

With respect to the evidence, there was sufficient evidence that the motorcyclist's death was caused by the collision, and Cerros does not argue that there was not sufficient evidence to show that element of manslaughter. The evidence of reckless driving was that Cerros was driving on the wrong side of the highway and was 5 to 6 feet over the centerline at the time of the collision. The evidence also indicated a lack of skid marks, and the accident reconstructionist opined that Cerros had not taken reactive or corrective measures to avoid the collision. From this evidence, the jury could have determined that Cerros was not maintaining a proper lookout for an oncoming motorcycle as he drove in the wrong lane. The jury could reasonably have concluded that this evidence showed Cerros was operating the vehicle in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property and that therefore, he was committing the unlawful act of reckless driving. The jury had all the evidence

before it and was given a proper definition of reckless driving. A rational finder of fact could conclude Cerros committed reckless driving.

Cerros argues that his actions did not amount to reckless driving but instead were merely negligent or the result of momentary inattention. He presented evidence in his defense from which he argued that he was on the wrong side of the highway because he was preparing to turn left onto a county road. The jury could have considered the evidence Cerros presented in his defense and found that his driving did not meet the standard of "indifferent or wanton disregard" that was necessary to establish reckless driving. However, it is also reasonable that the jury could have rejected such evidence or that it could have found that even if his proffered reason was the true reason he was driving on the wrong side of the highway, that reason did not excuse his choice to drive on the wrong side of the highway and that doing so and failing to look out for oncoming traffic indicated an indifferent or wanton disregard for any motorist who might be driving from the opposite direction. Therefore, the jury could properly have considered the evidence presented by both parties and found reckless driving.

There was sufficient evidence to support Cerros' conviction for manslaughter, and we reject this assignment of error.

*District Court Did Not Err When It Failed
to Instruct on Careless Driving as a
Lesser-Included Offense.*

Cerros finally claims that the district court erred when it failed to instruct the jury on careless driving as a lesser-included offense. He argues that the evidence supported a finding that he was guilty of careless, but not reckless, driving. Cerros reasons that because careless driving cannot be the predicate unlawful act for manslaughter, the jury could have acquitted him of manslaughter and convicted him of the lesser offense of careless driving. We conclude that Cerros

did not explicitly request and did not offer a proposed lesser-included offense instruction based on careless driving and that therefore, the district court did not err when it did not give such an instruction.

[9,10] With regard to lesser-included offense instructions, we have said that a court must instruct on a lesser-included offense if (1) the elements of the lesser offense *for which an instruction is requested* are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021) (emphasis supplied). Specifically, with respect to lesser-included offense instructions, we have stated that in cases where murder is charged, a court is required to instruct on lesser degrees of homicide where appropriate, but in other circumstances, a court must instruct on a lesser-included offense only if requested to do so and that failure to instruct on a lesser-included offense "cannot be considered error if the defendant did not request the instruction." *State v. Smith*, 284 Neb. 636, 651, 822 N.W.2d 401, 413 (2012).

The issue as framed by Cerros on appeal regarding a lesser-included offense instruction is at odds with the record at trial and injects some confusion; thus, we clarify what the record shows. At the jury instruction conference and elsewhere, Cerros verbally asked the district court to instruct that reckless driving was a lesser-included offense even though Cerros was not charged with reckless driving and reckless driving served only as a predicate element of manslaughter. Cerros did not ask verbally or in writing that the jury be instructed that careless driving was a lesser-included offense of any charged crime.

At the jury instruction conference in this case, Cerros raised objections to the court's proposed instructions and offered certain proposed instructions of his own. With regard to the charge of manslaughter, Cerros argued that the predicate

unlawful act should be willful reckless driving, an offense set forth in Neb. Rev. Stat. § 60-6,214 (Reissue 2021), rather than reckless driving, an offense set forth in § 60-6,213. The district court rejected this argument on the basis that reckless driving "has sufficient mens rea such that it can be the underlying unlawful offense for a manslaughter charge." Cerros specifically stated that he was "asking for the lesser included offense of reckless driving." The district court did not specifically address this request, but it overruled Cerros' objections and did not give a lesser-included offense instruction on reckless driving. Cerros does not claim on appeal that the district court erred when it refused a lesser-included offense instruction on reckless driving. Instead, he claims the court erred when it did not give a lesser-included offense instruction on careless driving. Cerros cites *State v. Howard*, 253 Neb. 523, 571 N.W.2d 308 (1997), for the proposition that careless driving is a lesser-included offense of reckless driving. He argues that there was evidence from which the jury could have determined that he drove carelessly but not recklessly. It is not clear from Cerros' arguments whether he asserts that the court should have instructed on careless driving as a direct lesser-included offense of manslaughter or whether there should have been a step instruction wherein reckless driving served as the lesser-included offense of manslaughter (based on reckless driving) and thence careless driving served as the lesser-included offense of reckless driving. We need not resolve this issue, because despite his contentions to the contrary, Cerros did not request an instruction on careless driving and thus has not preserved this issue for appeal.

Cerros' comments at the jury instruction conference focused first on his argument that the underlying offense should be willful reckless driving. He also verbally requested a lesser-included offense instruction, but he identified the lesser offense as "reckless driving under 60-6,212 or 60-6,213" and argued that "the jury theoretically could find there was no proximate cause, but he was reckless driving or willful reckless driving."

He did not state that he was requesting a lesser-included offense instruction on "careless driving."

Nevertheless, Cerros argues on appeal that he was asking for an instruction on careless driving. Cerros concedes that he did not speak with clarity at the jury instruction conference and elsewhere, but argues that it was evident that he was referring to careless driving. We disagree. Cerros' comments at the jury instruction conference referred only to "reckless driving" or "willful reckless driving," and he did not explicitly refer to "careless driving." The reference to "60-6,212 or 60-6,213" was ambiguous at best and was not a clear reference to careless driving. Instead, we read the comment as suggesting uncertainty as to whether the statute defining "reckless driving" was found in Neb. Rev. Stat. § 60-6,212 (Reissue 2021) or § 60-6,213, or it could suggest a mistaken reference to the two statutes as being the statutes that defined "reckless driving" and "willful reckless driving." Furthermore, although he provided other proposed written instructions, to our knowledge, Cerros provided no proposed lesser-included offense instructions, and none appear in our appellate record. See *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015) (stating appellant's failure to include proposed jury instruction in record on appeal precluded appellate determination of whether tendered instruction was correct statement of law and was warranted by evidence).

Because Cerros did not request a lesser-included offense instruction on careless driving, the district court's failure to instruct on careless driving as a lesser-included offense cannot be considered error. See *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012). Therefore, the district court did not err when it did not give a careless driving instruction that was not requested. We reject this assignment of error.

## CONCLUSION

We conclude that the district court did not abuse its discretion when it allowed Betzen's testimony that driving on the

wrong side could be a sign of reckless driving, and the district court did not err when it did not give a lesser-included offense instruction on careless driving when Cerros did not request such an instruction. We further conclude that there was sufficient evidence to support Cerros' conviction for manslaughter. We therefore affirm Cerros' conviction.

AFFIRMED.