IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. ENQUIST


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL B. ENQUIST, APPELLANT.


Filed November 22, 2022.    No. A-21-1023.


Appeal from the District Court for Adams County: TERRI S. HARDER, Judge. Affirmed.

Shon T. Lieske, of Lieske, Lieske & Ensz, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.


MOORE, RIEDMANN, and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

Michael B. Enquist appeals from his conviction following a jury trial in the district court for Adams County of assault by strangulation, third degree domestic assault, and intimidation by electronic communication. On appeal, he alleges that certain evidence was improperly admitted, that the evidence was insufficient to sustain his convictions for assault by strangulation and third degree domestic assault, and that the court imposed an excessive sentence. Finding no error, we affirm.

## II. STATEMENT OF FACTS

### 1. CHARGES AND PRETRIAL PROCEEDINGS

On December 14, 2020, the State filed an information in the district court, charging Enquist with assault by strangulation, in violation of Neb. Rev. Stat. § 28-310.01 (Cum. Supp. 2022), a Class IIIA felony; third degree domestic assault, in violation of Neb. Rev. Stat. § 28-323 (Reissue

- 1 -

2016), a Class I misdemeanor; two counts of third degree assault, in violation of Neb. Rev. Stat. § 28-310 (Reissue 2016), both Class I misdemeanors; and intimidation by telephone call or electronic communication, in violation of Neb. Rev. Stat. 28-1310 (Cum. Supp. 2022), a Class III misdemeanor. The charges arose from Enquist's actions on October 19 and 20, 2020, with respect to his former girlfriend, Amanda Gomez, as well as his actions with respect to other family members of Gomez (her mother and one of her sisters were identified as the victims of the two counts of third degree assault).

On July 19, 2021, the State filed a motion, seeking to determine the admissibility of statements made by Gomez to a law enforcement officer immediately following the incident.

The district court heard the State's motion on September 13, 2021. At the hearing, the State presented testimony from Jenna Thayer, an officer with the police department of Hastings, Nebraska. Thayer testified about her contact with Gomez on October 20, 2020. After hearing argument from the parties' attorneys, the court took the matter under advisement. On September 15, the court entered an order, finding that Gomez' statements to Thayer were admissible as excited utterances pursuant to Neb. Rev. Stat. § 27-803(1) (Cum. Supp. 2022).

2. JURY TRIAL

A jury trial was held on September 20 and 21, 2021. The State presented testimony from witnesses including Gomez, several of her family members and a neighbor, police officers who investigated the charges, a forensic laboratory supervisor with the Nebraska State Crime Lab, and a licensed registered nurse. The court received various exhibits including social media text messages exchanged by Enquist and Gomez, photographs taken and physical evidence collected at the crime scene, and a crime lab report.

In October 2020, Gomez lived in an apartment in Hastings with her mother, her two sisters, her brother, and her two children. The apartment had both a front and back entrance, and the bedrooms were located upstairs. Enquist is the father of Gomez' children. At that time, Gomez and Enquist were no longer dating, but they communicated in person, by telephone, and through a social media messaging application.

During Gomez' testimony the State offered into evidence several text messages Gomez received from Enquist on October 19, 2020. Enquist's attorney objected on the bases of foundation and relevance, stating at the time the first of the message exhibits was offered, "there's no verification that it was [Enquist] that was on the other side of that conversation at the time in which it was happening." The district court overruled Enquist's objections and received the messages into evidence. The messages included the following statements from Enquist (quoted as written): "[Your youngest child] wont be 1 yet not even 6 months without mother think that bitch when u reply to other dudes think that," "do you dirty soon dont trip," "ill make sure suffering happens," "keep fuckn lying ill be over in 2.5 and snap u," "u lie we can slide into the bathroom and end u," and "U obviously think shits funny so tonight im going to show you how funny it is."

Shortly after 7 a.m. on October 20, 2020, Gomez woke when she heard her bedroom door shut, and she saw Enquist standing by the bedroom door. Gomez testified that she and her children were the only ones in the room when she went to bed and that she had locked her door from the inside. Enquist and Gomez argued, and during their argument, Enquist attempted to grab Gomez, who tried to get away from him and began yelling for her mother. Enquist bit Gomez' lip to keep

her from screaming and began choking her with his hands around her throat. Gomez testified that she was not able to breathe. She recalled Enquist standing in front of her at that time.

Gomez' mother and sisters heard her screaming and ran to her room. Gomez' mother tried to open the door, which was locked, so she kicked it open. Gomez' mother and sisters observed Enquist standing behind Gomez with his arms around her neck. According to Gomez' mother, Enquist appeared to be applying pressure, Gomez' tongue was out, and Gomez was trying to scream but was only making "squeaking noises."

Gomez' mother and one of her sisters began hitting Enquist to try to remove Enquist's hands from Gomez' neck. When Enquist finally released Gomez, she was unconscious and fell to the floor where her mother tried to revive her. The physical altercation between Enquist and Gomez' sister continued until Enquist bit the sister's finger and ran out of the room. Gomez' mother ran after Enquist because she was afraid that he might hurt her son, who was sleeping downstairs. Gomez' sisters followed. When Gomez' mother reached the bottom of the stairs, Enquist struck her in the face several times. He also struck one of Gomez' sisters in the head before running out the front door.

When Gomez regained consciousness, she felt "confused and sick," her lip was bleeding, and Enquist's "hand prints" were on her neck. Gomez went to a neighbor's residence and "bang[ed]" on the door. The neighbor observed various injuries to Gomez, including a laceration on her lip, some marks on her neck, and light bruising on her face. The neighbor called 911.

Around 7:30 a.m. on October 20, 2020, Thayer and other police officers arrived at Gomez' residence. Thayer observed that the sliding glass back door to the residence had been boarded up, the tape securing the board had been cut, and the board had been pulled away from the door, creating an opening into the residence. Around 7:45 or 8 a.m., Thayer spoke with Gomez in her bedroom. By that point, Gomez had changed her clothes because she defecated in her pants during the assault. According to Thayer, Gomez appeared "shocked or stressed" and initially spoke very quickly as she described the incident. Thayer observed a cut on Gomez' lip but did not see any injuries on her neck. During Thayer's testimony about Gomez' statements, Enquist objected on the basis of hearsay; his attorney also argued that the statements to Thayer were "testimonial," "obtained as preparation for litigation and in violation of *Brady Maryland*," and "violate 403 and 404 as not being helpful to the jury." The district court overruled Enquist's objections, citing the court's pretrial ruling.

Additional evidence gathered at the scene by law enforcement included photographs of the damage to Gomez' bedroom door from her mother kicking it open, a swab from a bloodstain on the front door to the residence, and a Nebraska identification card belonging to Enquist found on the nightstand in Gomez' room. The swab was later sent to the Nebraska State Patrol Crime Lab where the DNA profile obtained was "7.29 times 10 to the 26th times more likely if it originated from [Enquist] than if it originated from an unknown unrelated individual."

The State called a licensed registered nurse as an expert witness. The nurse testified that strangulation can cause a person to lose consciousness in as little as 5 to 10 seconds, can cause a person to lose control of his or her bladder or bowels, and does not necessarily leave visible marks on a person's neck. She opined, based on her review of police reports and photographs provided to her, that Gomez had been strangled.

## 3. Verdict

The jury found Enquist guilty of assault by strangulation, third degree domestic assault, and intimidation by electronic communication, but it found him not guilty of the two counts of third degree assault.

## 4. Sentencing

A sentencing hearing was held before the district court on November 22, 2021. After hearing argument from the parties' attorneys and comments from Enquist, the court sentenced Enquist to 3 years' imprisonment and 18 months' post-release supervision on the assault by strangulation conviction, to 1 year of imprisonment on the third degree domestic assault conviction, and to 3 months' imprisonment on the intimidation by electronic communication conviction. The court ordered the sentences on the third degree domestic assault and intimidation by electronic communication convictions to run concurrently with one another but consecutively to the sentence on the assault by strangulation conviction. The court gave Enquist credit for 383 days of time served.

## III. ASSIGNMENTS OF ERROR

Enquist asserts, restated and reordered, that (1) the district court erred in admitting hearsay statements made to officers based on the court's finding that the statements constituted excited utterances by Gomez, (2) the court erred in allowing evidence about social media text messages without proper foundation and over his relevancy objections, (3) the court erred in allowing testimony concerning the emotional reaction of witnesses without proper foundation and over his relevancy objection, (4) the evidence was insufficient to convict Enquist of assault by strangulation and third degree domestic assault, (5) the court erred by imposing an excessive sentence.

Enquist has not argued his third assignment of error, and he presents arguments that were not specifically assigned as error. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022). Accordingly, we have only considered Enquist's first, second, fourth, and fifth assignments of error as set forth above.

## IV. STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.* A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Id.* A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Cerros, supra.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Greer, supra.*

## V. ANALYSIS

### 1. ADMISSION OF EVIDENCE

### (a) Excited Utterance

Enquist asserts that the district court erred in admitting hearsay statements made to officers, specifically Gomez' statements to Thayer on October 20, 2020, based on the court's finding that the statements constituted excited utterances.

Thayer was one of the officers dispatched to Gomez' residence on the morning in question. She arrived at the residence 3 or 4 minutes after being dispatched. She spoke with Gomez within 15 or 20 minutes of when officers first arrived and stated that the reported incident occurred "immediately prior" to her being dispatched. Thayer stated that Gomez initially spoke "very quickly" and appeared "shocked or stressed." After the district court overruled Enquist's objection to Gomez' statements to Thayer, Thayer testified about Gomez' description of the incident, including her statements that she woke to the sound of her door closing to find Enquist in her bedroom, that he physically assaulted her, and that he "started to choke her."

Enquist argues that this testimony should not have been admitted under the excited utterance exception to the hearsay rule. For a statement to qualify as an excited utterance, the following criteria must be established: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant under the stress of the event. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018). The key requirement to the excited utterance exception is spontaneity, which requires a showing that the statements were made without time for conscious reflection. *Id.*

Here, the startling event was the assault on and strangulation of Gomez, and Gomez' statements related to that event because the statements identified the person who committed those acts. Thus, the issue is whether her statements were made under the stress of the assault and strangulation.

An excited utterance does not have to be contemporaneous with the exciting event. *Id.* It may be subsequent to the event if there was not time for the exciting influence to lose its sway. *Id.* The true test is not when the exclamation was made but whether, under all the circumstances, the declarant was still speaking under the stress of nervous excitement and shock caused by the event. An excited utterance does not have to be contemporaneous with the exciting event. It may be subsequent to the event if there was not time for the exciting influence to lose its sway. *Id.* Facts relevant to whether a statement is an excited utterance include the declarant's manifestation of

stress, the declarant's physical condition, and whether the declarant spoke in response to questioning. *Id.* Statements made in response to questions from law enforcement in particular do not generally have inherent guarantees of reliability and trustworthiness. *Id.* But the declarant's answer to a question may still be an excited utterance if the context shows that the statement was made without conscious reflection. *Id.*

Here, Gomez was violently assaulted by Enquist, observed his violence against other members of her family, and was exhibiting signs that she was still in shock when she spoke to Thayer a short time later. We note Thayer's testimony at the pretrial hearing that Gomez' responses to her questions were "short" and "rambling." Although her statements were made in response to questions from law enforcement, we find that they were made while she was still under the stress of Enquist's violent behavior. The district court did not err by admitting Gomez' statements to Thayer as excited utterances. And, even if the court had erred in admitting that portion of Thayer's testimony, any error was harmless because it was cumulative to Gomez' testimony at trial and there was other competent evidence to support Enquist's convictions (e.g., multiple witnesses observed Enquist strangling Gomez, there was DNA and other physical evidence tying Enquist to the crimes, as well as other evidence that Gomez had been strangled). See *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022) (when evidence is cumulative and there is other competent evidence to support conviction, improper admission or exclusion of evidence is harmless beyond reasonable doubt). This assignment of error fails.

### (b) Text Messages

Enquist asserts that the district court erred in allowing evidence about social media text messages without proper foundation and over his relevancy objections. The exhibits containing the messages were admitted at trial during Gomez' testimony over Enquist's objections as to foundation and relevancy. He did not object to Gomez' testimony that the exhibits were true and accurate copies of messages she received from Enquist on October 19, 2020.

This assignment of error fails. First, although Enquist assigned error to the admission of the messages on the bases of relevancy and foundation, he argues that the messages were improperly admitted hearsay evidence. See *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court). Additionally, Enquist did not object to the admission of the text messages on the basis of hearsay and has not preserved that issue for appeal. An objection must be specifically stated, and on appeal, a defendant may not assert a different ground for his or her objection to the admission of evidence than was offered to the trier of fact. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021).

### 2. SUFFICIENCY OF EVIDENCE

Enquist asserts that the evidence was insufficient to convict him of assault by strangulation and third degree domestic assault.

Under § 28-310.01(1), a person commits an assault by strangulation if the person knowingly and intentionally "[i]mpedes the normal breathing or circulation of the blood of another person by applying pressure on the throat or neck of the other person" or "[i]mpedes the normal breathing of another person by covering the mouth and nose of the person." Pursuant to

§ 28-323(1), a person commits third degree domestic assault if he or she "(a) [i]ntentionally and knowingly causes bodily injury to his or her intimate partner," "(b) [t]hreatens an intimate partner with imminent bodily injury," or "(c) [t]hreatens an intimate partner in a menacing manner."

Gomez, her mother, and her sisters all observed Enquist in Gomez' bedroom on October 20, 2020. Gomez woke to see Enquist standing by the door, and they began to argue. Gomez described their argument as both verbal and physical, indicating that Enquist was grabbing her hands as she tried to get away from him and he bit her lip at one point to stop her screaming. As their argument progressed, Enquist placed his hands on Gomez' throat and choked her, causing her to pass out. Gomez' mother and sisters heard Gomez scream and saw Enquist in Gomez' room "choking" or "strangling" Gomez, who fell to the floor once Enquist released her. When she came to after passing out, Gomez felt "confused and sick," her mouth was bleeding, and Gomez' hand prints were on her neck. Gomez called 911 from a neighbor's house, and the neighbor observed a laceration on Gomez' lip, some marks on her neck, and light bruising on her face. Law enforcement took photographs of Gomez' face and neck, collected items belonging to Enquist from Gomez' bedroom, and located and collected blood from Enquist on an outside door to the residence. The injury to Gomez' lip is visible in the photographs. There was fecal matter on the pants Gomez was wearing at the time of the incident. A licensed registered nurse who viewed the photographs and police reports, testified that signs of strangulation can include loss of consciousness and "involuntary urine or stool," that there may be no signs or symptoms, or that they may show up days later. She opined that the evidence she reviewed was "consistent with somebody who has been strangled."

Enquist's arguments about the sufficiency of the evidence on appeal involve the credibility of various witnesses and the weight of certain evidence, and as noted above, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, which matters are for the finder of fact. See *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022). Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence to sustain Enquist's convictions for assault by strangulation and third degree domestic assault in connection with the October 2020 incident.

### 3. EXCESSIVE SENTENCE

Enquist was convicted of one count of assault by strangulation, a Class IIIA felony, one count of third degree domestic assault, a Class I misdemeanor, and one count of intimidation by electronic communication, a Class III misdemeanor. § 28-310.01, § 28-323, and § 28-1310. A Class IIIA felony is punishable by a maximum of 3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months' post-release supervision if imprisonment is imposed. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2022). A Class I misdemeanor is punishable by a maximum of not more than 1 year of imprisonment, or $1,000 fine, or both; there is no minimum term of imprisonment. Neb. Rev. Stat. § 28-106(1) (Reissue 2016). A Class III misdemeanor is punishable by a maximum of 3 months' imprisonment, or $500 fine, or both; there is no minimum term of imprisonment. § 28-106(1).

The district court sentenced Enquist to 3 years' imprisonment and 18 months' post-release supervision for assault by strangulation, to 1 year of imprisonment for third degree domestic

assault, and to 3 months' imprisonment for intimidation by electronic communication, with the domestic assault and intimidation sentences running concurrently with one another but consecutively with the strangulation sentence, and the court gave him credit for 383 days of time served.

Enquist recognizes that his sentences were within the statutory ranges, but he argues that the district court should have imposed sentences of probation, time served, or sentences more lenient than those it did impose. With respect to probation, Neb. Rev. Stat. § 29-2260(2) (Reissue 2016) provides:

> Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:
>
> (a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;
>
> (b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or
>
> (c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

During the sentencing hearing, the district court spoke directly to the exclusionary factors found in § 29-2260(2). The court noted "the amount of past criminal behavior that has the same type of violence involved" reflected in Enquist's criminal history. The court also noted that Enquist was "very high risk to reoffend" based on the Level of Service/Case Management Inventory administered during the Presentence Investigation (PSI), stating it thought Enquist's score was "tied for the highest score that the Court has ever seen on a PSI," which did not "bode well for a consideration of probation." The court found that there was a likelihood that Enquist would reoffend if placed on probation, that he was not a suitable candidate for probation, and that placing him on probation would promote a disrespect for the law. The court properly applied the statutory guidelines in denying probation and did not abuse its discretion in that regard.

Enquist also argues that the district court abused its discretion by failing to adequately consider mitigating factors that would have supported more lenient sentences. When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing

judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

According to the PSI, Enquist, age 28 at the time of his interview with probation, attended high school (dropping out his junior year), and had three dependents (including his two children with the victim). He was unemployed at the time of the interview. He has a lengthy prior criminal history, including multiple convictions for domestic assault, as well as convictions for shoplifting and theft, possession of a controlled substance, assault by confined person, DUI, terroristic threats, assault, and other crimes. He has been placed on probation and post-release supervision before, which were revoked each time. Enquist scored a 35 on the Level of Service/Case Management Inventory, placing him in the overall very high risk range. His score on the Substance Abuse Questionnaire was in the maximum risk range for drugs, violence, and antisocial, and in the problem risk range for alcohol. The Standardized Risk Assessment Report Form for substance abuse offenders he completed reflected a high risk for recidivism. Enquist also completed a Domestic Violence Offender Matrix that placed him in a high risk level.

The district court's comments at the sentencing hearing reflected that it had considered all of the relevant factors with respect to Enquist and the particular circumstances of this case. Based upon this record, we can find no abuse of discretion by the court in the sentences imposed.

## V. CONCLUSION

The district court did not err in admitting Gomez' statements to officers as excited utterances. The evidence was sufficient to sustain Enquist's convictions. The court did not abuse its discretion in sentencing Enquist.

AFFIRMED.